Nathan R. Sobel, J.
The issue in this proceeding is whether the court upon written waiver duly executed by a defendant may try a felony charge of grand larceny without a jury.
The defendant was indicted by the Grand Jury for the crime of grand larceny in the second degree.
On the date of trial, August 13, 1956, the defendant and his then counsel, Mr. Leon Kesner, requested the court to try this case without a jury. The court directed the defendant and his counsel to execute a waiver in open court and file same with the clerk.
The waiver was so executed and signed by both defendant and his counsel. It read: “ Pursuant to Article I, Section 2 of the Constitution, I, Valentine J. Carroll, the defendant, under indictment 2061/55, do hereby waive jury trial on this indictment. I do so after consultation with my counsel, Leon Kesner, and with full understanding of the rights which I waive hereby.”
The court briefly questioned the defendant and ascertained that he had been fully advised and understood the nature of the waiver and the rights waived by him. The court read the waiver into the record.
The assistant district attorney protested the execution of the waiver and the trial was similarly protested, both before it commenced and during its progress, solely on the ground that the court was without power to try this case without a jury. The District Attorney raised no question as to the time, form or contents of the waiver, and conceded to the court that he was otherwise prepared to proceed to trial.
The trial resulted in a verdict of “ not guilty ”, the court ruling that the defendant’s guilt had not been established beyond a reasonable doubt. No issue was raised by the District Attorney’s office in that regard.
On October 15, 1956, assistant district attorney William I. Siegel, chief of the.appeals division of the Kings County District Attorney’s office, formally moved this case for retrial with a jury. Again, the sole issue raised was the power of the court under section 2 of article I of the State Constitution to hold a criminal trial without a jury.
The District Attorney contended that the constitutional provision was not self-executing and that legislation was required before a defendant could be permitted by the court to waive a *583 trial by jury. He contended that the trial had was a nullity and that the indictment was still open for trial.
The court denied that motion, stating its reasons on the record and requesting permission of the District Attorney to amplify its ruling by a memorandum opinion. The court then most respectfully urged the District Attorney’s office promptly to proceed to settle this issue between the court and the District Attorney by appeal.
The court added, ‘ ‘ Whether you appeal from my judgment on the trial or from this order denying a retrial, or elect to procure another indictment, which I shall promptly dismiss — whichever method you select — I would respectfully urge that you proceed promptly.”
It is apparent now that the District Attorney has elected to obtain a new indictment from another Grand Jury, upon which indictment the defendant has been arraigned and pleaded ‘ ‘ not guilty ”, and also “ not guilty ” by virtue of previous jeopardy. Defendant moved to dismiss the indictment. That motion was granted.

Waiver of Privilege of Jury Trial

I prefer to rest my determination in this case upon my conclusion that the intent was to make the constitutional provision in issue (N. Y. Const., art. I, § 2) self-executing.
But the defendant has contended that irrespective of intent and even in the absence of any constitutional provision permitting a waiver, a defendant may nevertheless forego the privilege of jury trial.
Cancemi v. People (18 N. Y. 128 [1857]) is to the contrary. In that case the court concluded (p. 137) that waivers of jury trial in criminal eases ‘ ‘ are not within the discretion or control of the parties accused; for no one has a right, by his own voluntary act, to surrender his liberty or part with his life.”
But in Patton v. United States (281 U. S. 276) the Supreme Court rejected the contention that public interest or public policy required the submission of a criminal case to a jury regardless of the defendant’s waiver. In discussing the constitutional guarantees (U. S. Const., art. III, § 2; 6th Amdt.) the court held (p. 297) that the framers intended to preserve the right of trial by jury ‘ ‘ primarily for the protection of the accused ”. And that the privilege is one which the accused may forego at his election; for “ To deny his power to do so, is to convert a privilege into an imperative requirement” (p. 298).
*584 Recently Illinois followed the Federal reasoning in People v. Spegal (5 Ill. 2d 211). Specifically that case held that where the defendant waived a jury trial in a murder case, the trial court had no right to insist upon a trial by jury. A conviction by this jury was reversed.*
It is my judgment that in the light of our constitutional authorization (N. Y. Const., art. I, § 2) for waiver of jury trial in criminal cases, our courts should disregard Cancemi (supra) and follow the reasoning of the United States Supreme Court in Patton (supra) and of the other State courts cited above. This should follow even if my contention that our constitutional provision is self-executing is not sustained.

Convention Amendment

The first trial by jury provision for New York was incorporated in the Constitution of 1777. It provided as follows: “ Trial by jury, in all cases which it hath heretofore been used in the colony of New York, shall be established, and remain inviolate forever.”
The wording but not the meaning was changed slightly in the 1821 Constitution. The provision was amended in the 1846 Constitution to permit waiver in civil cases. The sentence was inserted — “But a jury trial may be waived by the parties in all civil cases, in the manner to be prescribed by law.” Please observe that the 1846 Amendment required legislative action. A later amendment in 1936 permitted a five-sixth verdict in civil cases.
During this period repeated discussions were had and amendments considered and offered in the Legislature and the constitutional conventions concerning waiver of jury trial in criminal cases.**
I do not detail these reports, messages and proposals since, as will be observed, none of them are pertinent to the issue.
*585 What should be noted however, is that a constitutional amendment was adopted by the Legislatures of 1935 and 1937; approved by the People and became effective January 1, 1938.
Thus prior to the Constitutional Convention of 1938, section 2 of article I of the Constitution read as follows: ‘ ‘ The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but a jury trial may be waived in the manner to be prescribed by law by the parties in all civil cases and by the defendant in all criminal cases, except those in which the crime charged may be punishable by death.”
This amendment effective January 1, 1938 (hereafter referred to as the 1938 amdt.) was a recommendation of the Judicial Council. (See supporting studies in 1936 and 1937 annual reports.) It is clear from such studies that the amendment was not self-executing and did contemplate further legislative action.*
The language of the new constitutional provision supports this conclusion. The transposition of the phrase ‘ ‘ in the manner to be prescribed by law ” to precede the provision for waiver in both civil and criminal cases indicates that such was the intent. Also the contemporaneous construction of the provision by the New York State Constitutional Convention Committee (see Vol. 6, pp. 12-14) supports this view. Thus from January 1, 1938 until the adoption of the existing amendment effective January 1, 1939, the provision was not self-executing.
At the 1938 Constitutional Convention several proposals were introduced governing waiver of jury trial in criminal cases.**
All of the proposed amendments were referred to the Committee on the Judiciary of which Judge Seabs was chairman. It may be presumed that the committee had before it the reports of the Judicial Council of 1936 and 1937. The Judicial Council had suggested that the method of waiver; whether it should be (1) made in writing; (2) in open court; (3) subject *586 to the consent of the District Attorney or court or both; should be left to the Legislature.
It is a matter of record as appears in the “ Appendix ” attached to this opinion that Int. No. 662, the proposal eventually adopted (hereinafter referred to as the Convention Arndt.) was proposed by the Judiciary Committee. Also it is of record that the proposal is a compendium of the desirable features of the other proposals referred to that committee. As reported it made provision for all three matters which the Judicial Council had suggested be “ determined by the Legislature and fixed by statute after a ratification of the amendment.” It added to the 1938 amendment text — “ by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense ’ ’. Thus the committee proposal required (1) a signing by the defendant, (2) in open court, (3) in the presence of and with the approval of the trial judge. The waiver could not be signed or executed at a preliminary hearing but only in the court and before a judge authorized to try the case. Nothing was left for legislative consideration or action.
But this proposal was debated for some time. As appears in the “ Appendix ”, amendments were suggested by other delegates. One of these adding the words ‘ ‘ in person ’ ’ was accepted by Judge Sears. Others, mainly a suggestion by Mr. Weinfeld, Mr. Kuczwalski and Mr. Ribman that the words ‘ ‘ after consultation with counsel ’ ’ be added, were not acceptable. The convention then recessed. It is evident that during the recess these delegates spoke to Judge Sears. After the recess, the following significant action was taken.*
As finally drafted and later approved by the People, the proposal (Int. No. 662, Pr. Nos. 742, 812) read as follows:
“ 2. [The trial] Trial by jury in all cases in which it has [been] heretofore [used] been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may *587 be waived [in the manner to be prescribed by law] by the parties in all civil cases [and] in the manner to be prescribed by law. The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense. The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such ivaiver. [The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jurymen constituting a jury in any civil case.] ”
The term “ self-executing ” was never used in the convention debate nor was the issue here in question actually discussed. No formal committee report exists; we are completely in the dark with respect to the Judiciary Committee’s intention.
But great significance must be given to the colloquy between Mr. Bibman and Judge Sears. “Is it intended that the Legislature may further develop this proposal or is it deemed complete as it stands? ” To which Judge Sears answered “ It was originally deemed to be complete ” etc. Then followed the post-recess amendment.
I believe, one point, should be clear. The sole issue is whether the convention amendment was or was not self-executing prior to the post-recess amendment. Certainly the addition of the post-recess amendment did not change a self-executing provision into a mere declaration requiring further legislative action. It would be absurd to believe that a lawyer of Judge Sears’ experience — he was then Presiding Justice of the Appellate Division, Fourth Department — did not understand the legal significance of the word “may ”. He used “may ” because he meant may, not must or shall.
A logical inference from the record is that after the debate on the floor, advocates of the proposal to include “ after consultation with counsel ” argued their contentions with him during the recess. During the convention, Judge Sears, had advocated mightily that the Constitution should contain only broad principles and that details should be the subject of legislation. This had been a frequently debated issue. In keeping with that advocacy, he reasoned no doubt that the problems discussed during the recess were matters for legislation not principles worthy of inclusion in the substantive law. He there *588 fore offered the post-recess amendment as a purely permissive declaration that further details may be enacted by the Legislature.
Thus the point I make, and which I believe is absolutely sound, is that the issue in controversy depends solely on the intent of the convention prior to the addition of the post-recess permissive phrase. But I believe that the addition of the post-recess amendment is indicative of the belief by the proponents that the provision was self-executing. For if it were considered that the convention amendment was not self-executing, why give the Legislature permission to do, something which it was required to do before the amendment could become effective?
I believe that is what Judge Sears meant when he answered Mr. Ribman’s question — “It was originally deemed to be complete as it stands, but I now propose * * * to add this section”. He then added the permissive phrase so that the Legislature could provide for consultation of counsel and such other details “ not inconsistent herewith ” as might be deemed necessary.
Another point. We do not have a record of the discussion in the Judiciary Committee but we can be certain that the committee understood that the existing provision was not self-executing. The 1938 amendment had been sponsored by the Judicial Council. Three of the members of the Judiciary Committee were also members of the Judicial Council. They knew that the Judicial Council had recommended that certain problems be left to the Legislature. Yet, observe what was done by that committee in its original proposal Pr. 742. The phrase “ in the manner to be prescribed by law ” which was applicable to both civil and criminal cases was transposed so that it was applicable only to civil cases. The committee then proceeded to include within the substantive law all the matters which the Judicial Council had suggested be decided by legislative action. The proposed amendment required that the waiver be in writing and signed by the defendant. It required that it be done in open court. It required that the waiver should not be effective if made during preliminary examination in a Magistrates’ Court, but could only be made in the court authorized to try the issues and in the presence of the judge. There had been much controversy in the Federal courts and in the courts of States which permit waivers, whether consent of the judge, or both the judge and District Attorney, were required. (See Patton v. United States, 281 U. S. 276 [1930]; United States v. Dubrin, 93 F. 2d 499, cert, denied 303 U. S. 646; Sammons v. State, 53 Ga. App. 369 [1936]; People v. Eubanks, 7 Cal. App. 2d 588 *589 [1935].) The learned lawyers and judges on the Judiciary Committee were aware of that problem. They provided that the consent of the judge alone was required. Really, the only principle omitted was provision for prior consultation with counsel. But Judge Sears explained in the debate that it was considered and intentionally omitted. Thus no important principle worthy of inclusion in the Constitution was omitted. There was nothing for the Legislature to do except perhaps prescribe for consultation with counsel and provide a uniform form of waiver.
I conclude from all of these — the colloquy between Judge Sears and Mr. Ribman, the deliberate selection of language in the committee amendment, the addition of the permissive language in the post-recess amendment and the careful definition and determination of all controversial issues — that it was the intention of the convention to make the provision in question self-executing. There is no evidence to the contrary and strong logic to support my conclusion.

Rules of Construction

It is, of course, a fundamental rule of construction that the real intent of a provision when ascertained controls over the literal sense of the words. (See McKinney’s Cons. Laws of N. Y., Book 2, Constitution, Rules of Interpretation, rule 1 and cases cited.)
But assuming absence of proof of real intent, rules of construction may furnish a guide.
1. It is a cardinal rule of construction that no part of the Constitution should be construed so as to defeat its purpose or the intent of the People in adopting it. (1 Cooley on Constitutional Limitations, pp. 124, 130; Gaines v. O’Connell, 305 Ky. 397; Tuttle v. National Bank of the Republic of St. Louis, 161 Ill. 497; Kitchin v. Wood, 154 N. C. 565; State ex rel. Billington v. Sinclair, 28 Wn. [2d] 575; State ex rel. Trent v. Sims, 138 W. Va. 244.) The intent of the People in adopting the amendment was to permit waiver of jury trial in a criminal case. A construction should be favored which would accomplish that purpose rather than permit its defeat by the failure of a Legislature to act.
2. Where the intent of a constitutional provision is manifest from the words used and leads to no absurd conclusion, there is no occasion for interpretation and the meaning which the words import should be accepted without conjecture. (McKinney’s Cons. Laws of N. Y., Book 2, Constitution, Rules of Interpretation, rule 1, p. 5, and cases cited.) “ It will be presumed *590 that the framers of the constitution used the language employed' by them intelligently and according to its customary significance, and that they meant what they said.” (McKinney’s Cons. Laws of N. Y., Book 2, Constitution, Rules of Interpretation, rule 8; see Davis v. Burke, 179 U. S. 399; Judd v. Board of Educ., 278 N. Y. 200; Newell v. People, 7 N. Y. 9; Countryman v. Norton, 21 Hun 17; State ex rel. Billington v. Sinclair, supra; State ex rel. Linn v. Superior Court, 2 Wn. [2d] 138; State ex rel. Palagi v. Regan, 113 Mont. 343; ex rel. Trent v. Sims, supra; State ex rel. Ellars v. Board of County Commrs., 147 Fla. 278; Adams v. Bolin, 74 Ariz. 269.)
The language employed in the convention amendment manifests an intent to make it self-executing. Making it effective would lead to no absurd conclusion. It is complete as it stands. No question of prime public policy is left unattended. There is no occasion for interpretation. It can be given the force of law without further legislative action.
3. “ The fact that a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of a constitutional provision necessarily preclude legislation for the better protection of the right secured, or legislation in furtherance of the purposes, or of the enforcement, of the provision ”. (16 C. J. S., Constitutional Law, p. 144 and cases cited.)
The United States Supreme Court followed this rule of construction in United States v. Reese (92 U. S. 214). “ A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. * * * A constitutional provision does not lose its self-executing quality merely because it provides that the legislature shall by appropriate legislation provide for carrying it into effect; and the mere fact that legislation might supplement and add to or prescribe a penalty for the violation of a self-executing provision does not render such provision ineffective in the absence of such legislation.” (1 Cooley on Constitutional Limitations [8th ed.], pp. 167-168, 170.)
Cooley on Constitutional Limitations in discussing self-executing provisions of Constitutions, states: “ The fifteenth amendment provides that ‘ the right of citizens of the United States to *591 vote shall not be denied or abridged by the United States, or by any State, on account of race, color, or previous condition of servitude. ’ To this extent it is self-executing, and of its own force it abolishes all distinctions in suffrage based on the particulars enumerated. But when it further provides that ‘ Congress shall have the power to enforce this article by appropriate legislation ’, it indicates the possibility that the rule may not be found sufficiently comprehensive or particular to protect fully this right to equal suffrage, and that legislation may be found necessary for that purpose”. (Vol. 1 [8th ed.], p. 166.)
I conclude that the provision is self-executing.
I reach this conclusion from the history of the convention amendment. I believe a fair inference, from the debate and action taken thereon, can be drawn that such was the intention of the convention.
But even in the absence of any clear indication of convention intention, the same conclusion must be reached from the very language of the amendment and from the familiar rules of construction by which we must be guided in interpreting constitutional provisions.
Indictment 290/57 is dismissed. The defendant has been duly tried and acquitted under indictment 2061/56 charging the identical crime in fact and in law. Submit order.
Appendix — Pertinent Debate and Discussion — Record, Constitution Convention of 1938 pp. 1273-1286.
The Secretary: General Order No. 24, Int. No. 662, Pr. No. 742, by the Committee on Judiciary.
The Chairman: The Chair recognizes the chairman of the Judiciary Committee.
Mr. Sears: Mr. Chairman, the Judiciary Committee has prepared an amendment to Section 2 of Article I of the Constitution in relation to trial by jury. There are several different parts of this amendment. The first provision is to continue the constitutional guarantee undiminished. The second proposal and the main one here involved, is to restrict to a certain extent the present constitutional provision in relation to the waiver of the right to a jury trial by a person brought to trial in a criminal case.
It will be remembered that at the last election, an amendment was adopted providing that there might be a waiver of a jury trial by a defendant in a criminal ease. I will take the liberty of reading that part of the section which was written into the Constitution by the amendment so adopted.
The provision is: “A jury trial may be waived in the manner to be prescribed by law by the parties in all civil cases.”
That has long been in the Constitution. And then the words were added: “ and by the defendant in all criminal cases, except those in which the crime charged may be punishable by death.”
It was thought by the proposer of two amendments that there should be some restriction upon the right to waive, so as to assure the defendant an *592 understanding of what he was doing, and it was proposed that the waiver must be made in writing and in court as a protection to the rights of the defendant.
We re-wrote the proposals to a slight extent. We divided the part about the waiver in civil cases from the part relating to the waiver in criminal eases, making the part about the waiver of jury trial in criminal eases a new sentence, so that it would read: “ A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death.” That was the previous rule. And we added “by a written instrument signed by the defendant in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.”
The proposal is a very simple one. It is intended to protect the rights of the defendant, to assure him by the necessity for an approval by the judge of full opportunity to understand what he is doing. That is all that there is in this proposal, and we ask that that be advanced.
* * *
Mb. Gabby : May I suggest to the distinguished chairman of the committee that while he is proposing amendments he propose the further amendment that there be inserted in line 10 after the words “ signed by the defendant ” the words “in person”. At first blush that sounds like redundancy and a senseless amendment. Unfortunately, that is not true. That very question has been presented to the courts of last resort in this country, and I refer particularly to the Supreme Court of Illinois, where reversals have been had, where that waiver was not signed by the defendant in person.
• •
Mb. Sears: amendment.
Very well, Mr. Garey, I will include that in my proposed • • •
Mb. Weinfeld : May I ask a question?
The Chairman : Mr. Weinfeld.
Mb. Weinfeld : Judge Seabs, I take it that the committee gave con-
sideration to all proposals on this particular subject.
Mb. Seabs : Yes.
• • *
Mb. Weinfeld: I find that some of them, including one presented by me, used the words, “ after consultation with counsel.” I should like to ask Judge Seabs the reason which prompted the committee to disregard the use of that language in submitting the proposed amendment.
Mb. Sears: We thought that that was sufficiently covered by requiring
the approval of the judge, because we believe that you could rely upon the judge of the very court which had jurisdiction to try the case to see that the defendant was well advised, and if the judge thought it was necessary for him to consult counsel, he would see that that would be done, but there may be eases where the defendant says he does not want to have counsel, and that would prevent his waiving in such a case, and where we allow a defendant to plead guilty without the advice of counsel, we think we can trust him with the power to waive a jury without the advice of counsel, if the judge approves.
In most cases undoubtedly the judge would say, “You had better consult counsel. Have you consulted counsel? Have you counsel? We thought it best not to so strictly confine it as was proposed in the amendment of which you speak.
* * *
*593 Mr. Weinfeld : That, o£ course, may be obviated by an amendment. If a defendant refused to have counsel after the court tendered him counsel, that is the end of the question.
Mr. Sears: All I can say is, it was carefully considered, and I believe that the protection which we provide in the requirement that it should be in open court, in the presence of the judge and with the judge’s approval, which was not included, I think, in your amendment, that with those protections we had nothing to fear for such a defendant. That was our view.
Mb. Ribman: Mr. Chairman.
The Chairman: Mr. Ribman.
Mb. Ribman: May I urge, Judge Sears, that you heed what Mr. Weinfeld has said? There are judges in our State today and there have been judges, unfortunately, who are not all of the high caliber of the distinguished chairman of the Judiciary Committee or Judge Foley or the others here in this chamber, but the fact is that outrages have been committed by some of those judges and it is my opinion that the suggestion made by Mr. Weinfeld should prevail; that in addition to requiring the signature of the defendant there should be the provision that the signature should not be appended until after conference with counsel; and if the defendant declines to have counsel, that is another situation. And in any event, thereafter the approval of the court should be given. But safeguards should be thrown around the defendant to
the extent that if he so requires it, he shall have the advice of counsel.
• • •
Mb. Kuczwalski: I say, I should like to be enlightened on this situation, under this proposal, where a man is arrested and brought before the judge on arraignment and he is asked whether he pleads guilty or not guilty and he says he pleads not guilty, and a clerk, who is about ten feet away from the judge, hands him a slip of paper and says, “ Sign this ”, and he signs it. Of course, the judge is there and he sees it, and then after the date is fixed for trial, or set down on the calendar, he hires an attorney to defend him. The attorney asks him what he has done so far and he tells his attorney that he signed some kind of paper. The attorney finds out that he signed a waiver of trial by jury. I should like to know whether the attorney can come to court on the date of trial and demand the withdrawal of that waiver.
Mb. Sears: I think he undoubtedly can move to withdraw the waiver but that of course would call for the discretionary act of the court before whom he made the motion.
Mb. Kuczwalski: I raise this point at this time because of the suggestion made by the delegate from New' York in raising the question about advice of counsel, and inasmuch as he requested Judge Sears to consider that, and possibly the redrafting of the phraseology, I brought this to the attention of the committee.
Mr. Sears: These matters were considered by the committee in reporting this proposal.
' * * *
The Chairman : Mr. Sutherland, do you wish to be heard?
Mb. Sutherland: I wish to be heard very briefly, Mr. Chairman, because
I was one of those who introduced one of the several proposals, of which this is a component.
• * •
The effect of this proposal is to undo a mistake which I think we all made last fall. Last fall we, the people of this State, amended our Constitution to whittle away a little bit the right of a defendant to trial by jury by *594 providing in our Constitution that he could waive a jury trial. But we made a mistake, I think, in not providing safeguards for the waiver. I hope that this body today will correct what we failed to do, what we omitted to do, what we should have done last fall.
* *
*
AFTER RECESS
8:00 P.M.
The Chairman : The Committee of the Whole will come to order. When
we took the recess we were discussing General Order No. 24, Int. No. 662, Pr. No. 742. We were ready for the question, unless there were amendments to be proposed. Are there any amendments to be proposed?
Mb. Sears: Mr. Chairman.
The Chairman: Judge Sears.
Mr. Ribman : Mr. Chairman, will the delegate yield for a question?
Mr. Sears : Certainly.
Mb. Ribman: Is it intended that the Legislature may further develop this proposal by appropriate legislation, or is it deemed to be complete as it stands?
Mr. Sears: It was originally deemed to be complete as it stands, but I
now propose as the result of conversations that I have had since we took the recess to add to this section.
“ The Legislature may enact laws not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver.”
Mr. Ribman : Thank you.
• • •
Mr. Weinfeld: I have an amendment.
The Chairman: Will you read your amendment?
Mr. Weinfeld: I will send it to the desk.
The Secretary : By Mr. Weinfeld: Insert in line 10, after the word “ defendant ” the following in italics, “ in person after consultation with counsel and ”.
The Chairman: Is there any debate?
• • •
Mr. Weinfeld: Mr. Chairman, may I be heard for just a moment?
The Chairman: Mr. Weinfeld.
Mr. Weinfeld : I listened with a great deal of interest to the amendments offered by Judge Sears to his proposal, in the hope that it would obviate the need for the amendment which I have suggested, but I feel that his proposed amendment merely goes to the form of the waiver to be executed by a defendant,—
Mr. Foley : Form and manner.
Mr. Weinfeld: Even as to manner. But we are dealing with fundamental
rights, the question of the waiver of trial by jury by a man charged with •crime, and under those circumstances it should be written into the Constitution, because it may well be that no provision will be made by any Legislature to cover the objection which I have made tonight, that a man may be deprived of his right to trial by jury without a full and adequate understanding of just what he is doing. And I say with the utmost of respect for the learned Judges who are in this Convention that on occasion judges misunderstand their judicial function to the extent that they become part of the prosecution, that is, from a defendant’s viewpoint. And from the viewpoint of the administra *595 tion of justice it would seem to me that it ought not to lie in the mouth of a defendant ever to say that he waived his right to trial by jury without having been advised by counsel of his own choice and selection.
(Cries of “Question”.)
The Chairman : Are you ready for the question? All those in favor of the Weinfeld amendment will say Aye: contrary-minded, No. The amendment is lost.

 See, also, Rees v. United States (95 F. 2d 784); C. I. T. Corp. v. United States (150 F. 2d 85); Adams v. United States (317 U. S. 269); Mitchell v. State (233 Ind. 16, cert, denied 347 U. S. 975); Palmer v. State (195 Ga. 661); State v. Shroyer (49 N. M. 196); State v. Frohner (150 Ohio St. 53); State v. Lane (40 Wn. [2d] 734); State v. Ricks (173 Kan. 660); People v. Washington (95 Cal. App. 2d 454); State ex rel. Gutierrez v. First Judicial Dist. Ct. (52 N. M. 28).

See proposed Constitutional Amendment adopted hy Legislature of 1926 permitting waiver of jury in criminal trials; Reports of Crime Commission (N. Y. Legis. Doc., 1927, No. 94, pp. 50-52; N. Y. Legis. Doc., 3928, No. 23, p. 20; N. Y. Legis. Doc., 1929, No. 99, p. 57; N. Y. Legis. Doc., 1930, No. 98, p. 23); Message of Governor Lehman, Jan. 7, 1936, following the Proceedings of Governor’s Conference on Crime, the Criminal and Society, p. 1232. See, also, 1938 New York State Const. Conv. Comm. Reports, Vol. 2, pp. 1-3, 7, 10.

 “ The foregoing proposal of the Council differed from others on the same subject in that the details of its operation rest with the Legislature rather than form a part of the Constitution itself; that is, the specific method of waiver, whether it should be made in writing, in open court or should be subject to the consent of the district attorney or court or both, are to be determined by the Legislature and fixed by statute after a ratification of the amendment. This will afford greater flexibility in the choice of method than if it should form a part of the Constitution.” (Second Annual Report of N. Y. Judicial Council, 1936, p. 97.)

 See Int. No. 106, Pr. No. 107 by Mr. Dunnigan (probably not self-executing) ; Int. No. 133 Pr. No. 134 by Mr. Sutherland (self-executing); Int. No. 486 Pr. No. 513 by Mr. Weinfeld (probably not self-executing); Int. No. 662 Pr. No. 742 by the Committee on the Judiciary (self-executing).

 Mb. Ribman: “ Will the delegate yield the question?
Me. Seabs: Certainly.
Mb. Ribman: Is it intended that the Legislature may further develop this proposal by appropriate legislation, or is it deemed to he complete as it stands.
Mb. Seabs: It was originally deemed to be complete as it stands, but I now propose as the result of conversations that I have had since we took the recess to add this section,
“ The Legislature may enact laws not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver.” (Italics mine.)
Me. Ribman: Thank you.