OPINION OF THE COURT
Edward J. McLaughlin, J.
This juvenile delinquency proceeding involves a designated felony pursuant to the Juvenile Justice Reform Act of 1976 (L 1976, ch 878; Family Ct Act, §§ 711-767). It presents a case of first impression for this court. Respondent, a boy of 15, allegedly committed a robbery in the first degree (Penal Law, § 160.15), a designated felony. (Family Ct Act, § 712, subd [h].) When the case came before the court, the respondent moved for a jury trial, asserting that under Baldwin v New York (399 US 66), an individual charged with a crime where the penalty could exceed six months imprisonment is entitled to a jury trial. The respondent alleged that since he can be confined in a secure facility for a period of time up to 12 months, pursuant to section 753-a (subd 4, par [ii]) of the Family Court Act, the Baldwin doctrine applied, and he is entitled to a trial by jury.
On the other hand, the petitioner alleged that the United States Supreme Court decision in McKeiver v Pennsylvania (403 US 528) is controlling. McKeiver holds that a juvenile charged with a delinquency, which precludes, by definition, criminal consequences and tried in a civil court, does not have a due process right to a jury trial. Petitioner further alleged that while New York is not constitutionally precluded from granting a jury trial under McKeiver, it has determined not to do so, citing Matter of Daniel D. (27 NY2d 90) and Matter of George S. (44 AD2d 352).
The issue before the court, then, is whether the instant proceeding is controlled by McKeiver or by Baldwin. Specifically, the question turns on whether this is a juvenile proceeding within the meaning of McKeiver, or, whether so many of the attributes of a juvenile proceeding have been discarded that the proceeding is in effect "criminal” in nature and thus within the ambit of Baldwin.[1]
*372 A. IS A DESIGNATED FELONY PROCEEDING A JUVENILE PROCEEDING?
The concept of designated felony was created as a part of the Juvenile Justice Reform Act of 1976. (L 1976, ch 878.)
The Legislature has chosen to label this new "designated felony concept” as a "juvenile” proceeding. It is axiomatic that this court is not bound by that designation if, in fact, the new proceeding is indeed a criminal proceeding.[2] The Supreme Court recognized this principle in Trop v Dulles (356 US 86, 94), when the court taught us: "But the Government contends that this statute does not impose a penalty * * * We are told this is so because a committee * * * said it technically is not a penal law. How simple would be the tasks of constitutional adjudication and of law generally if specific problems could be solved by inspection of labels pasted on them”.
Further, "[Njeither the label which a state places on its own conduct, nor even the legitimacy of its own motivation, can avoid applicability of the Federal Constitution.” (Vann v Scott, 467 F2d 1235, 1240, decision per Judge Stevens, now Mr. Justice Stevens, on an Eighth Amendment challenge to a training school commitment.)
B. BACKGROUND OF THE JUVENILE JUSTICE SYSTEM
The fundamental substantive distinction between a juvenile proceeding and a criminal proceeding is that a juvenile disposition is limited to treatment, while a criminal proceeding may impose punishment regardless of whether the punishment results in retribution and, or, deterrence. The view that the difference between criminal and juvenile proceedings is the difference between retribution and deterrence, on the one *373 hand, and treatment, on the other, is confirmed by an examination of the history of the juvenile court system. This examination will also show that a denial of a juvenile’s full exercise of his constitutional rights can only be predicated upon the presence of the treatment principle of the juvenile justice system.
At common law there were no juvenile courts or juvenile proceedings. If a child, over the age of seven, committed a criminal act, he was tried in a criminal court, and afforded all of the privileges of an adult charged with the same conduct. Thus, he was arrested, indicted by a Grand Jury, tried by a petit jury, and, if convicted sent to prison. (Mack, The Juvenile Court, 23 Harv L Rev 104, 106.)
The reformers of the nineteenth century were appalled by the fact that juveniles could be given long prison sentences to be served with hardened criminals. They recognized that criminal jurisprudence was founded not on "reformation of the criminal, but punishment; punishment as expiation for wrong, punishment as a warning to other possible wrongdoers.” (23 Harv L Rev 104, 106.) To alleviate this situation, special juvenile centers were established which were authorized to admit children convicted of petty criminal offenses. The premise of these juvenile centers was that children were not criminal offenders, and, if properly treated, could be saved from a life of crime. The juvenile reform movement later became concerned not only with the disposition received by the juveniles but with the adjudication of juveniles as well. Thus, separate court proceedings were established.
The juvenile statutes were early challenged on the basis that the statutes were criminal in nature and the procedures employed were, therefore, violative of the constitutional protection applicable to criminal proceedings. In most cases the challenges were rejected on the ground that the disposition was rehabilitative and not grounded on motivations of punishment and deterrence. (E.g., Commonwealth v Fisher, 213 Pa 48.) Where the challenge succeeded was in those situations where the proceeding was, in effect, criminal in nature. (E.g., Robison v Wayne Circuit Judges, 151 Mich 315.)
This historical examination of the origins of the juvenile justice system shows that the informality, flexibility, and, concomitantly, the absence of constitutional safeguards at juvenile proceedings was justified on the ground that the juvenile was to be treated and rehabilitated. Conversely, when *374 the juvenile proceeding was primarily for retributive and deterrent purposes, it was considered criminal in nature, and hence subject to all of the limitations of a regular criminal proceeding. Sometimes referred to as the "exchange principle of juvenile law”,[3] the trading of the constitutional protections of a criminal proceeding for rehabilitation still remains today the sine qua non of juvenile proceedings. Typical is the comment of the court in Inmates of Boys’ Training School v Affleck (346 F Supp 1354). The court said (p 1364): "[T]he constitutional validity of present procedural safeguards in juvenile adjudications, which do not embrace all of the rigorous safeguards of criminal court adjudications, appears to rest on the adherence of the juvenile justice system to rehabilitative rather than penal goals * * * Rehabilitation, then, is the interest which the state has defined as being the purpose of confinement of juveniles. Due process in the adjudicative stages of the juvenile justice system has been defined differently from due process in the criminal justice system because the goal of the juvenile system, rehabilitation, differs from the goals of the criminal system, which include punishment, deterrence and retribution.”
It is against this background that McKeiver v Pennsylvania (403 US 528, supra) must be viewed. It is true that McKeiver stated that in a juvenile proceeding trial by jury is not a constitutional requirement. The court specifically refused to abandon the salutory goals of the juvenile system and rejected the jury trial because it could (p 547) "tend once again to place the juvenile squarely in the routine of the criminal process.” Indeed, the court acknowledged that when a child is adjudicated as a juvenile, but treated as a criminal, an inconsistency results, for the court stated (p 547-548): "Of course there have been abuses. * * * We refrain from saying at this point that those abuses are of a constitutional dimension.” In effect, the court deferred until a more appropriate occasion the determination of when a juvenile disposition fails to meet the rehabilitative premise of the juvenile system. The determination in McKeiver that in a juvenile proceeding a jury trial is not required, is, therefore, necessarily limited to those proceedings that are juvenile in nature. Thus, there is no requirement of a jury trial in Family Court where the disposi *375 tion is rehabilitative and nonpenal. When, however, the protections provided to the juvenile criminal offender have been so eroded away that what is actually a punishment is characterized as a treatment, an abuse of constitutional dimension has occurred, and, a jury trial is required before punishment, although appropriate, may be inflicted.
C. BACKGROUND OF THE 1976 ACT
In response to the reported increase in the frequency and severity of crimes committed by juveniles, the Legislature in the 1976 session enacted the Juvenile Justice Reform Act (L 1976, ch 878). This bill significantly amended article 7 of the Family Court Act. The express purpose of article 7 was redefined to include, for the first time, consideration of the needs of the community: "In any juvenile procedure under this article, the court shall consider the needs and best interests of the respondent as well as the need for protection of the community.” (Family Ct Act, § 711.) To this end, the Legislature created restrictive placement. Rejecting proposals to transfer seriously violent juveniles to the adult criminal system, the Legislature adopted restrictive placement as a method of dealing with the juveniles within the juvenile system. (Gottfried and Barsky, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 753-a, pp 217-219, 1977-1978 Pocket Part.)
The amendments to article 7 define four new terms — designated felony act,[4] designated class A felony act,[5] 6secure facility,[6] and restrictive placement.[7] (Family Ct Act, § 712.) Fur *376 ther, the amendments allow the County Attorney to be assisted by members of the District Attorney’s staff (Family Ct Act, § 254, subd [c]); provides that the probation service may not attempt to adjust some cases without the prior written approval of a Judge (Family Ct Act, § 734, subd [a], par [ii]); requires that, with a few exceptions, the Judge presiding at the fact-finding hearing shall preside at the dispositional hearing (Family Ct Act, § 742); and, eliminates in designated felony cases the Judge’s discretionary right to prevent disclosure of portions of the juvenile’s reports and histories to either the respondent or the petitioner. (Family Ct Act, § 750.)
D. AN ANALYSIS OF THE 1976 ACT
A significant change made by the Juvenile Justice Reform Act is the requirement that restrictive placement may be ordered for a juvenile found to have committed a designated felony, when the court determines that a juvenile requires such restrictive placement. (Family Ct Act, § 753-a.) Once restrictive placement is ordered by the court, the delinquent must remain in the placement for 12 months, if the placement results from an adjudication on a class A designated felony, or for 6 months, if the placement results from the adjudication of any designated felony. (Family Ct Act, § 753-a, subd 3, par [ii]; § 753-a, subd 4, par [ii].) Further, during the period of restrictive placement, the right to petition the court to stay the execution, to set aside, modify, or vacate the disposition is suspended. It is this suspension of the provisions of part 6 of article 7 of the Family Court Act which distinguishes a restrictive placement disposition from all other dispositions under article 7. Thus, the Legislature has created a definite sentence of placement nearly indistinguishable from definite sentences imposed upon adults under subdivision 2 of section 70.20 of the Penal Law.
Further, in mandating the minimum period of restrictive placement, when restrictive placement has been found to be needed at all, the Legislature has introduced two other concepts of the criminal justice process previously unknown in the juvenile system. First, the length of the commitment is determined by the act committed rather than by the needs of the child, and second, the sentence is mandatory. In effect, the Legislature has determined that a child who at the time of his *377 dispositional hearing requires restrictive placement will continue to require restrictive placement for the entire period of the minimum sentence. Prior to the enactment of this statute, the court was only required to determine that at the time of the dispositional hearing the needs of the child were for placement in an institution and that at any time during that initial period, if the child was successfully rehabilitated, he was entitled to release. Consistent with this philosophy of treatment was the provision that if at the end of the initial placement the child was not successfully rehabilitated, then, the period of placement could be extended. In effect, once the court makes a finding that restrictive placement is needed at the time of the disposition, the act then mandates a minimum sentence, a result which is more harsh on the juvenile than is the criminal procedure for the adult who is entitled to an indeterminate sentence in nearly all cases. (Penal Law, § 70.00.)
The distinction between indeterminate and determinate sentencing is not semantic, but indicates fundamentally different public policies. Indeterminate sentencing is based upon notions of rehabilitation, while determinate sentencing is based upon a desire for retribution or punishment.
In his vigorous dissent in Matter of Gault (387 US 1, 79), Mr. Justice Stewart succinctly distinguished the purpose and mission of the juvenile system of justice from the purpose and mission of the criminal system: "The object of the one [juvenile] is correcting of a condition. The object of the other [criminal] is conviction and punishment for a criminal act.” By mandating restrictive placement in a secure facility for a minimum of six months, the Legislature has created a disposition that more nearly resembles a punishment than a treatment and, thereby, has blurred the clearly distinct objectives of the juvenile justice system with those of the criminal justice system.
The thinly disguised intent of the Legislature to punish an adjudicated designated felon, based upon the criminal act and upon the characteristics of the victim of the criminal act, as opposed to rehabilitating and treating a juvenile offender is revealed by the 1977 amendment to subdivision 2-a of section 753-a of the Family Court Act which states: "the court shall order a restrictive placement in any case where the respondent is found to have committed a designated felony act in which the respondent inflicted serious physical injury * * * *378 upon another person who is sixty-two years of age or more.” This court does not deny that punishment may be appropriate for certain designated felons. This court does insist, however, that deprivation of liberty for purposes of punishment based on the nature of criminal acts committed must be surrounded by constitutional protections not now available in Family Court proceedings.
The very heart of the rehabilitative nature of the juvenile justice system in New York is the array of remedies provided in part 6 of article 7 of the Family Court Act, for it is these remedies that have protected the right of a juvenile to an indeterminate sentence. (Cf. Matter of Ilone I, 64 Misc 2d 878.) It is the indeterminate quality of a juvenile disposition that makes the disposition rehabilitative. To refuse to allow a part 6 motion (Family Ct Act, §§ 761-768) to modify or to terminate a placement gives the disposition clearly criminal characteristics.
E. TREATMENT
The Juvenile Justice Reform Act requires that treatment be available at restrictive placement facilities. The availability and quality of treatment available to the respondent is not at issue here. What is at issue is the mandatory time period required for treatment. (Family Ct Act, § 753-a.)
Analogies may be made between the treatment of persons confined because of mental illness and juveniles confined because of delinquency. Serious consideration has been given recently to the constitutional rights of persons involuntarily committed to mental hospitals following noncriminal dispositions. In identifying treatment as a right for the mentally ill, for instance, a court concluded that at the least an institution must make a bona fide effort to cure, since the purpose of the involuntary hospitalization is treatment, not punishment. (Rouse v Cameron, 373 F2d 451.) Similarly, another Federal District Court found that noncriminal procedures for commitment which lacked constitutional safeguards were valid only for treatment and not for punishment. (Wyatt v Stickeny, 325 F Supp 781; cf. O’Connor v Donaldson, 422 US 563; Jackson v Indiana, 406 US 715.)
Juveniles also have a right to treatment. (Martarella v Kelley, 349 F Supp 575; Inmates of Boys’ Training School v Affleck, 346 F Supp 1354, supra; Matter of Neil M. v Gregory M., 71 Misc 2d 396.) Moreover, one court has found that " 'the *379 right to treatment’ includes the right to individualized care and treatment.” (Nelson v Heyne, 491 F2d 352, 360, cert den 417 US 965.) The reasoning of the court in Nelson is helpful in analyzing time limited restrictive placement (p 360): "Because children differ in their need for rehabilitation, individual need for treatment will differ * * * Without a program of individual treatment the result may be that the juveniles will not be rehabilitated, but warehoused, and that at the termination of detention they will likely be incapable of taking their proper places in free society; their interests and those of the state thereby being defeated.”
Clearly, treatment may result in a cure in six days, or in six weeks, or in six months, or in one year, or never! By setting a mandatory minimum time period for restrictive placement, treatment becomes indistinguishable from punishment.
F. INTAKE — A CRITICAL STAGE IN DESIGNATED FELONY ACT PROCEEDINGS
Intake proceedings are a unique feature of the juvenile justice system in this State. The intake conference provides for a screening out of cases not suited to court intervention. (Matter of Charles C, 83 Misc 2d 388.) It is designed to return the juvenile to the community prior to the formulation of a petition. (Matter of Frank H., 71 Misc 2d 1042.) The intake procedure of the Family Court, as it applies to juvenile delinquency, confers authority on the probation service to offer informal, voluntary conferences to settle the differences between the petitioner and the respondent. In fact, in his concurring opinion in McKeiver (403 US 528, 552, supra), Mr. Justice White said that "the distinctive intake policies and procedures of the juvenile court system to a great extent obviate [the] important function of the jury.”
Under the 1976 amendments to the Family Court Act, a juvenile accused of a designated felony must obtain the "prior written approval of a judge of the court” before an adjustment may take place. (Family Ct Act, § 734, subd [a], par [ii].) It had been the rule in New York that "[n]o statement made during a preliminary conference may be admitted into evidence at a fact-finding hearing”. (Family Ct Act, § 735; 22 NYCRR 2507.4 [a] [6], previously 22 NYCRR 2506.3 [d].) This rule had been interpreted as a protection for the respondent against self incrimination, and, thus, the intake conference had not been considered a "critical” stage of adjudication and, therefore, *380 the child was not entitled to counsel at the conference. (Matter of Frank, supra; Matter of Anthony S., 73 Misc 2d 187.)
It now appears that the kind of information previously protected during intake proceedings and not admitted as evidence in fact-finding hearings must be made available to the court before the court can determine whether the case is, or is not, suitable for adjustment. Thus, the informality, responsiveness, and flexibility of the intake proceeding, a unique tool of the juvenile justice process, is vitiated, and intake becomes a critical stage of the proceedings and the protection of the constitutional rights of the respondent becomes essential. Whether a respondent is entitled to counsel at a designated felony intake conference is now certainly a consideration.[8] (See Argersinger v Hamlin, 407 US 25.)
G. OTHER FEATURES OF THE ACT
Other features of the Juvenile Justice Reform Act are traditionally more associated with criminal proceedings than with civil proceedings. While these procedures are legally less significant than those discussed above, the new procedures do serve to flavor the act with criminal spice.
For instance, in a juvenile proceeding the petitioner’s case is presented by the County Attorney (Family Ct Act, § 254, subd [a]), but in a designated felony case the District Attorney may present the case. (Family Ct Act, § 254, subd [c]). This provision, at the least, demonstrates a recognition. by the Legislature of the criminal nature of a designated felony proceeding. Further, the court must authorize the fingerprinting and photographing of juveniles adjudicated as designated felons. (Family Ct Act, § 753-b.) Then, the assignment of the same Judge to both fact-finding and dispositional hearings repre *381 sents a major shift in juvenile justice processes. (The New York Juvenile Justice Act of 1976: Restrictive Placement — An Answer to the Problem of the Seriously Violent Youth? 45 Fordham L Rev 408, 419-425.) The Legislature’s intent was "to ensure that the judge who makes the disposition * * * will have familiarity with all the circumstances surrounding the case”. Gottfried and Barsky, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 742, p 204, Pocket Part.) The presentencing hearing has its parallel in criminal proceedings. (Cf. CPL 380.30, 390.20, 390.50, art 400 and Family Ct Act, § 753-a, subd 2.) The requirement of psychological tests, reports and histories fails to distinguish the designated felony proceeding from a criminal proceeding. (Cf. CPL 390.20 and Family Ct Act, § 750, subd 3.)
In a criminal proceeding the court may in its discretion except from disclosure to counsel portions of the presentencing investigation reports "which might seriously disrupt a program of rehabilitation” (CPL 390.50, subd 2). The same discretion is not afforded the court in a juvenile designated felony case. (Family Ct Act, § 750, subd 4.) Ironically, the juvenile court Judge is faced with restrictions that fly in the face of rehabilitation the very purpose for which there is a system of juvenile justice distinct from the criminal justice system.
H. THE NEED FOR A JURY TRIAL
The revision of the Family Court Act by the Juvenile Justice Reform Act of 1976 transformed a purely rehabilitative juvenile statute into a statute that mirrors a retributive criminal statute, but fails to reflect the constitutional protections presumed to apply to such statutes. This transformation is most particularly evidenced by the requirement of restrictive placement in a secure facility for a definite period of time for a person found to have committed a designated felony and to be in need of restrictive placement with no provision for changing the placement if rehabilitation of the juvenile offender is found to have occurred. Other aspects of the revision also indicate that the designated felony proceeding is in its very essence a criminal proceeding, although labeled a juvenile proceeding. Since it is essentially a criminal proceeding, it is required that all the safeguards mandated by the United States Constitution be afforded the accused.
The particular constitutional safeguard now before the *382 court is the Sixth Amendment right to a trial by jury. Since it is the conclusion of this court that the designated felony portions of the Juvenile Justice Reform Act of 1976 are fundamentally criminal in nature, the respondent is entitled to a trial by jury for a criminal prosecution.
Were it possible to extend this right to the respondent, no serious problem would arise. Unfortunately, it is not possible for this court to have the facts determined by a jury, since the law in this State is clear that no court may conduct a trial by jury unless such proceeding is authorized by statute. (People v Carroll, 7 Misc 2d 581; Matter of Daniel D., 27 NY2d 90, supra.)
The quandry thus created for the court is, may it proceed in this case given its inability to extend a right to a trial by jury? And further, if it may so proceed, how does it protect the rights of the respondent and the rights of society?
It is the determination of this court that it is entitled to proceed to the fact-finding hearing on this alleged act of delinquency without a jury, provided that prior to the taking of any testimony the court advises the respondent that regardless of the outcome, this court will not order restrictive placement, and this it now does. (Baldwin v New York, 399 US 66, supra.)
If the alleged facts are proven, thereby giving this court jurisdiction to make a disposition, and if at that dispositional hearing it is determined that placement is necessary, such disposition will be ordered and the respondent may be placed for an initial period of 18 months. If the treatment is not completed at the end of such time, placement will be extended within the provisions of the law and, accordingly, the right of society to be protected from further depravations will be as effectively insured as if a restrictive placement were ordered, and at the same time the right of the respondent to modification of that disposition as soon as he responds to treatment will be preserved.
Accordingly, motion for trial by jury is denied.

. Without reaching the conclusion that a proceeding in a designated felony case was a juvenile proceeding, the Family Court of King’s County recently concluded that the United States Constitution Sixth Amendment right to a trial by jury in a criminal prosecution did not apply. (William M. v Harold B., 90 Misc 2d 173.) While McKeiver left to the discretion of the States the use of jury trials in juvenile proceedings, the right to a jury trial in a criminal proceeding applies to the States through the Fourteenthf Amendment. (Duncan v Louisiana, 391 US 145.)

. In holding that the Fifth Amendment protection from double jeopardy applied to juvenile proceedings, a constitutional guarantee traditionally associated with criminal prosecutions, the United States Supreme Court in Breed v Jones (421 US 519, 529) noted: " 'We believe it is simply too late in the day to conclude * * * that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew 'the "civil” label-of-convenience which has been attached to juvenile proceedings,’ Matter of Gault [387 US 1, 50] and that 'the juvenile process * * * be candidly appraised.’ 387 U.S., at 21.” Doubtless even a clear legislative classification of a statutes as "non-penal” would not alter the fundamental nature of a plainly penal statute.

. For an extensive analysis of the exchange principle in juvenile law see Katz, Juveniles Committed to Penal Institutions — Do They Have the Right to a Jury Trial?, 13 J Fam Law 675.

. Subdivision (h) of section 712 of the Family Court Act states: " ’Designated felony act’. An act committed by a person fourteen or fifteen years of age which, if done by an adult, would be a crime (i) defined in sections 125.27 (murder in the first degree); 125.25 (murder in the second degree); 135.25 (kidnapping in the first degree); or 150.20 (arson in the first degree) of the penal law; (ii) defined in sections 120.10 (assault in the first degree); 125.20 (manslaughter in the first degree); 130.35 (rape in the first degree); 130.50 (sodomy in the first degree); 135.20 (kidnapping the second degree), but only where the abduction involved the use or threat of use of deadly force; 150.15 (arson in the second degree); or 160.15 (robbery in the first degree) of the penal law; or (in) defined in the penal law as an attempt to commit murder in the first or second degree or kidnapping in the first degree.”

. Subdivision (i) of section 712 of the Family Court Act states: " 'Designated class A felony act’. A designated felony act defined in clause (i) paragraph (h) of this section.”

. Subdivision (j) of section 712 of the Family Court Act states: " 'Secure facility’. A residential facility in which the juvenile delinquent may be placed under this article, which is characterized by physically restricting construction, hardware and procedures, and is designated a secure facility by the division for youth.”

. Subdivision (k) of section 712 of the Family Court Act states: " 'Restrictive *376 placement’. A placement pursuant to section seven hundred fifty-three-a.”

. The quasi-criminal nature of juvenile proceedings has long been recognized. (Matter of Gregory W., 19 NY2d 55.) The current recognition of the critical and criminal nature of the early stages of these proceedings is evidenced by the strict application of the Criminal Procedure Law to these juvenile proceedings. For instance, a court held that the more stringent pretrial discovery procedures of the CPL should apply to such proceedings rather than the more generous disclosure provisions of the CPLR. (Matter of Terry T., 90 Misc 2d 1015.) Another court denied a respondent’s motion for an identification hearing, a suppression order and a bill of particulars because the motion was not timely under CPL 255.20. (Matter of Archer, 89 Misc 2d 526.) On the other hand, a court found that in the case of a six-month delay between initial detention and initial appearance that article 30 of the CPL did not apply and no speedy trial problems resulted. (Matter of Walters, 91 Misc 2d 728.) It would appear that juveniles have quasi-rights in quasi-criminal proceedings.