Millard L. Midonick, J.
This opinion serves to illustrate an approach to prevention and cure of heroin addiction without resort to the Narcotic Control Act of 1966. (Mental Hygiene Law, §§ 207, 208 et seq.)
That legislative treatment of this vital problem sought to ameliorate the plight of the sufferers and of the public by providing for those alleged addicts charged with a crime: (1) medical examination indicating prima facie addiction; and (2) after a verdict of guilt of prostitution, of a misdemeanor, or of a felony, a separate trial of the issue of fact as to narcotic addiction; and (3) if addiction is established by separate trial or admission, a nondiscretionary three-year* subjection of the addict by court judgment to the close supervision of the State Narcotic Addiction Control Commission. That program of three-year control is so stringent and so akin to incarceration, despite its rehabilitative purpose, as to cause almost invariable resistance to these procedures by those accused of addiction in Criminal Court, County Court, or Supreme Court. Moreover, the Court of Appeals has held that since incarceration for civil addiction commitment requires a jury trial, equal protection mandates a jury trial for convicted addicts as well as civil addicts, as to the issue of such addiction. (People v. Fuller, 24 N Y 2d 292.) Only a rare misdemeanant accused of addiction wishes to risk such confinement and/or close supervision for three years, since the prison term for a class A misdemeanor cannot exceed one year.
Since all intra-family disorderly conduct (even private disorderly conduct), assault, menacing, harassment, and endangerment can be brought before the Family Court (Family Ct. Act, § 812 et seq), there is another approach to prevention and cure of drug addiction which is more flexible, less disagreeable to the addict and his family, far less expensive to the community, and sometimes effective or at least worthy of recourse for many of these problem people.
*361 This case demonstrates a typical example. It happens to present itself in a parent-son controversy, but the technique is available in a wife-husband conflict as well.
Father petitioned here against his 17-year-old son as a person who had assaulted his father and had been disorderly within his home. The cause of the disagreement stems from four months of heroin injections by the son, at the rate of three ‘ ‘ bags ’ ’ per day, the parent claimed. The son contended that he had given his “needle” to his mother four days before the court hearing and before the assault, and that he had suffered no withdrawal symptoms, and was therefore not “ addicted. ”* The father replied by testifying that the assault had occurred because of the pseudo-withdrawal syndrome, in that the family physician had limited the son to one dose of sedative per day, but that the son had attacked the father to force him to dispense an overdose which the father was withholding from the son.
After a finding of disorderly conduct and of striking his father had been made (several policemen had been required to subdue the boy in his home), the dispositional hearing began. The father applied for a shelter program for the son, refusing to return the boy to the family home on the ground that the mother feared his conduct and could not support having this eldest child as a bad example to young children in the home.
The hearing was then interrupted for a short family interview and evaluation by the Mental Health Clinic of the Family Offense Term, in attendance at the court house. Dr. Sylvester K. Eastman, one of our court psychiatrists, then testified that the respondent boy appeared to be a “ typical addict personality 9 9 who could not be controlled except in a closed shelter away from the community.
The complaining father, and indeed the court psychiatrist too, were then advised by the court that the Legislature had not given the Family Court any direct authority to hear a narcotic addiction proceeding. Bather, if Family Court disposition were found inappropriate because of narcotic addiction of the respondent, our only recourse would require referral to the Criminal Court of the assault for the tortuous procedure of (a) prosecution for misdemeanor and if found guilty, (b) a jury trial in an addiction proceeding in the Supreme Court. The alternative of a direct Supreme Court petition by father against son, for an addiction control trial, would also run the gauntlet *362 of a jury trial. (Matter of James, 22 N Y 2d 545.) The wisdom of these safeguards for such preservation of the liberty of alleged addicts is not for the court to question.
The court explained to the parties an alternative available within the .reach of Family Court jurisdiction. The father and the general public suffer from the misunderstanding that the only alternative to three years of quasi-incarceration for narcotic addiction is the unrealistic hope that the accused addict will at long last gain control of himself by submitting voluntarily (1) to outpatient daytime programs such as that of Phoenix House or Odyssey House, (2) to voluntary shelter programs such as Synanon or Daytop, and/or (3) to short term voluntary “drying out” programs such as those offered by some of our hospitals.
This court’s method, which if effective in particular cases is the method of choice for many who can be controlled by it, is the order-of-protection method. If a family home will receive this boy in the community, a daytime outpatient therapy program can sometimes be enforced. When explained to him, the complaining father, and the “disorderly” son as well, gladly accepted this third way. Our court psychiatrist also modified his opinion as to the immediate need of confinement away from home, providing another example of the close and mutually rewarding help available between medicine and law in this court. In this case the boy’s paternal grandmother’s home was agreed upon as a proper temporary home for him. The order of protection, effective for one year, provided in substance that the respondent boy must conform to the following conditions of behavior on pain of immediate custodial return to the Family Offense Term of the Family Court at the request of either parent or of the grandmother with whom he would reside, and that all police are authorized and required to help enforce the same upon request of either parent or the grandmother:
(l)the respondent is forbidden to use or possess any drug whatsoever, narcotic or otherwise, or hypodermic needle or syringe, without a doctor’s approval; (2) the respondent is required to live in the home of his paternal grandmother and remain away from his parents ’ home unless and until permitted to return to his parents’ home by them; (3) the respondent is forbidden to disobey his paternal grandmother or his parents, or to act in a disorderly manner toward any of them or toward the police; (4) the respondent is required to co-operate strictly with the outpatient program of Phoenix House or Odyssey House, any short-term hospitalization required by the director *363 of such programs, and other like therapy as directed by the Probation Department of the Family Court; (5) the respondent is required to return for further dispositional hearing and progress report to Family Court on October 3, 1969; (6) certificates of this order of protection were issued to the respondent, to each of his parents, and to his said grandmother, to be used by any of them as needed for immediate police assistance.
Thus the alleged addict is under a manner of control at all times. He is not under confinement or in a closed shelter or prison or hospital (except for the latter briefly, if symptoms require, for the usual, three-week period), nor is he even under house arrest. But he knows that his parents and his custodial grandmother have the police at their call. And he knows that this court can punish him with short-term confinement for minor violations, or can transfer the original infraction to Criminal Court, if these loose controls prove unworkable. The benefits are many:
(1) the respondent’s liberty is curtailed only to the extent reasonably necessary;
(2) the respondent is not thrown into close contact with confirmed addicts whose years or tribulation may have driven them to confirmed habits of crime or prostitution;
(3) the respondent is not deprived of the supports and the amenities of community and family life;
(4) the taxpayers are not burdened with the huge cost of institutional care;
(5) the respondent is supervised by official probation officers from time to time, and, more important, by the surveillance of his own family who, armed with the certificates of our injunctive order of protection, become “ built-in ” and full time “ probation officers ” for their own kin in trouble;
(6) the therapy of the outpatient programs to help addicts or persons in danger of addiction, is made compulsory; and
(7) all this on the basis of approximately one-half hour’s court hearing, without criminal record or jury trial.

 In the case of a felony verdict, a discretionary five-year period may be imposecl.

 Some of the respondent’s story was ordered not to be recorded by the court stenographer to avoid self incrimination in the event of future criminal proceedings.