Stanley Gartenstein, J.
The facts before the court in this family offense proceeding would ordinarily bear no special mention except for the fact that the respondent, Gregory M., is just over the age of 16 and that the assaults he committed upon his adoptive father and mother appear to be' matched by as much hostility on their part as by frustrated anger on his. One incident illustrative of the pattern occurred when Gregory returned home, his eyes bandaged from a blow torch injury and after being refused help, assaulted the father. The boy lives outside their home; has been excluded by an order of protection issued in prior proceedings; and would not return if invited. To summarize much of the testimony and recriminations, the feeling is mutual probably with much justification on both sides.
Gregory is under age and cannot wander the streets on his own. The court, observing him, sees impressive qualities in raw form which if channeled would benefit himself and society.
Were his behavior before this court prior to his 16th birthday, Gregory could have been adjudicated a person in need of supervision (hereinafter referred to as PINS) under article 7 of the Family Court Act. In that event, the court would have had jurisdiction to place him in a suitable facility conducive to his social and psychological development. Unfortunately, this jurisdiction is lacking, having been lost on his 16th birthday.
Faced specifically with a family offense proceeding under article 8 of the Family Court Act, the court’s authority to deal with the situation is delineated by section 842 which outlines the court’s alternatives, one of which is the issuance of an order of protection, a disposition already made. Unfortunately, this still leaves Gregory outside the home and unsupervised. Obviously the simple answer is placement.
*398 On the question of placement, the court notes. (Matter of “ S.” v. “ (60 Misc 2d 359) in which the Family Court placed a 17-year-old addict with his maternal grandmother — out of his own home — in a family offense proceeding between the petitioning parents and the respondent son. Fortunately, a relative within the second degree, a placement specifically authorized by section 842, was available and the respondent therein was willing to accept this placement.
Unfortunately, turning to this matter, Gregory is a headstrong young man who refuses voluntary placement in excellent facilities arranged for him by special efforts of Catholic Charities and no relative appears to be available for this type of disposition. In addition, section 842 specifically prohibits this court from placing, boarding out or committing any child to an institution or agency in this type of proceeding.
Is it the place of this court to issue a protective order and turn its back on the litigants or is it faced with an obligation to help'Gregory who has no other place to turn?
In a report entitled ‘1 Juvenile Justice Confounded ’ ’, Judges Polish and Roache of this court, speaking for a Committee on Mental Health Services Inside and Outside the Family Court in the City of New York set up with authorization by the Presiding Justices of the Appellate Divisions of the First and Second Departments, quote Chief Judge David L. Bazeloh of the United States Court of Appeals for the District of Columbia: ‘ ‘ The true measure of the quality of a judicial system is how many hidden problems it brings into public view ’ ’.
A problem does exist: what can this court do for this boy who so sorely requires its intervention in his life?
Basic to the philosophy of the Family Court’s jurisdiction over minors is that an infant under 16 years of age is conclusively presumed incapable of committing a crime or being held accountable to society for antisocial behavior. For this reason, upon proof that certain acts which would otherwise be criminal or antisocial in nature have been committed, the court has jurisdiction to temporarily deprive a minor of his liberty so that he may be treated and returned to his community as a better person useful to himself and to society. It is axiomatic that if society confines an infant in the name of treatment and fails to provide that treatment, then the cause of detention becomes illusory and a sham. (See Sas v. State of Maryland, 334 F. 2d 506; Rouse v. Cameron, 373 F. 2d 451; Wyatt v. Stickney, 325 F. Supp. 781.)
*399 Accordingly, article 7 of the Family Court Act delineating juvenile delinquents and persons in need of supervision is not a criminal or quasi-criminal statute. Indeed, the Supreme Court of the United States in Matter of Gault (387 U. S. 1); Matter of Winship (397 U. S. 358), and McKeiver v. Pennsylvania (403 U. S. 528) while requiring constitutional due process for infants accused during the fact-finding stages of such proceedings, emphasizes that juvenile justice is peculiar to the law and is emphatically not criminal in nature. Once a fact finding is made and the court assumes jurisdiction, the court commits itself to stepping into this juvenile’s life for his or her benefit.
If these statutes are viewed thusly, we must also be prepared to hold that they create a vested right. That once jurisdiction is taken, that infant has a right to treatment rather than a liability to be subject to it. The difference is not in semantics but rather in a positive expectation as opposed to negative defeatism.
One of the dynamic areas in the evolving process of juvenile justice is the constitutional undercurrent evident in recent years which has swept away many of the vestiges of the misconceptions about juveniles still pending in the law. The constitutional ‘ ‘ house cleaning ’ ’ of these statutes has been so sweeping, that gaps have been left in our statutes. Coming almost contemporaneously have been two decisions, one declaring the so-called ‘ ‘ wayward minors” act unconstitutional, (Gesicki v. Oswald, 336 F. Supp. 371) and the other (Matter of Patricia A., 31 N Y 2d 83) which declared unconstitutional the age disparity wherein jurisdiction over females on PINS matters extended to age 18 while it stopped at 16 for males (based upon a denial of equal protection of the laws).
Much had been argued prior to the Patricia A. decision about females between 16 and 18 being unconstitutionally discriminated against by being subject to the PINS provisions of article 7 during those years when jurisdiction over males for similar behavior stopped at 16. The same argument could have been made in reverse with equal merit. Did not a male find himself denied equal protection of the laws when treatment was available to females between ages 16 and 18 and not to him? Paraphrased: Under the statute recently struck down, if Gregory were a female, this court could have helped him instead of standing by helplessly. Now that the Court of Apeáis has struck down this statute on the basis of disparity between its provisions relating to males and females, both find themselves in a position where treatment is unavailable to them. Thus while *400 the law grants them maturity at age 18, it makes no provision for caring for them until that age.
Perhaps a reordering of priorities and legislative thinking on this question would be in order when and if the Legislature considers an enactment to substitute for the statutes struck down. It would seem in order that this problem be viewed with an eye toward providing treatment for both males and females up to age 18.
The court notes a trend increasingly evident to set age 18 as a focal point at which minors begin to be thought of as adults. Article 10 defining neglected and abused children sets the jurisdictional age at 18. Again, in delinquency matters, dispositions can be made until age 18 for all acts committed prior to the 16th birthday.
The Legislature appears to be moving in this direction. The recent session should serve as ample illustration. Chapter 719 of the Laws of 1972 amending section 170 of the Domestic Relations Law permits 18-year individuals to execute binding separation agreements requiring court approval until age 21. Chapter 769 of the Laws of 1972 amends the Public Health Law and adds section 2504 thereto which authorizes a person 18 or over to give his own consent for medical or dental treatment. Again chapter 868 amending section 3 of the Public Officers Law lowers the age requirement for holding public office to 18.
If the Legislature of this State sees fit to legislate age 18 as a limit in PINS matters, it would make jurisdiction consistent with prevailing attitudes. With so much in the old law having been swept away, the rewriting of this statute, if forthcoming, might be accomplished with definite legislative recognition of recent “ right to treatment ” cases.
Solution to the problems raised herein obviously must rest with the Legislature which is charged with enunciating the public policy of this State. As a matter of policy, one decision which is crucial to this area of jurisprudence is whether or not an infant between 16 and 18 is so set in his ways and outlook that court supervision or intervention in his life would be meaningless and a useless gesture. This has in fact been argued often enough in this court.
A further consideration, by no means an irrelevant one, is that of availability of facilities. Succinctly put, this question is: in view of the inadequacy of facilities now 'Serving the Family Court system for the jurisdiction it already has, would any useful purpose be served in extending the jurisdiction of this court when no funds are available to match its new responsibili *401 ties ? If litigants are to put their lives and expectations in the hands of this court, would it not he incongruous to raise their hopes preparatory to a rude awakening that society’s priorities put other matters first in the allocation of available funds 1
Finally, if none of the available alternatives becomes reality, the Legislature could well concern itself with a reconsideration of section 842 removing the curbs on the court’s ability to deal with this situation.
Lacking any other alternative, the court must acknowledge its helplessness. The warrant is vacated; the order of protection is confirmed; no further action appears warranted by law. The court sincerely hopes that Gregory’s potential may yet not be squandered. However, if this hope not be realized, the consideration of this matter by the Legislature may yet save the potential of youths similarly situated, trapped by circumstances over which they have no control, whose right to self realization may well be contingent on the existence or lack of it of jurisdiction in this court.