Ricky WYATT, by and through his Aunt and legal guardian Mrs. W. C. Rawlins, Jr., et al., Plaintiffs,

v.

Dr. Stonewall B. STICKNEY, as Commissioner of Mental Health and the State of Alabama Mental Health Officer, et al., Defendants.

Civ. A. No. 3195–N.

United States District Court,
M. D. Alabama, N. D.

March 12, 1971.

George W. Dean, Jr., Destin, Fla., for plaintiffs.

Joseph D. Phelps, of Hill, Robison, Belser, Brewer & Phelps, Montgomery, Ala., and Jerry Wood, Asst. Atty. Gen., Montgomery, Ala., for defendants.

### ORDER

JOHNSON, Chief Judge.

This is a class action that was initiated by guardians of patients confined at Bryce Hospital, Tuscaloosa, Alabama, and by certain employees of the Alabama Mental Health Board who are assigned to Bryce Hospital. The plaintiffs sue on behalf of themselves and on behalf of other members of their respective classes.[1]

The defendants are the commissioner and the deputy commissioner of the Department of Mental Health of the State of Alabama, the members of the Alabama Mental Health Board, the Governor of the State of Alabama, and the probate judge of Montgomery County, Alabama, as representative of the other judges of probate in the State of Alabama.

The case is now submitted upon plaintiffs' motion for a preliminary injunction, the opposition of the defendants thereto, and the testimony taken in connection with the hearing on plaintiffs' motion.

The Alabama Mental Health Board is a public corporation created by the State of Alabama through legislation codified at Title 22, Sections 311–336, Alabama Code (Supplement 1969). This board is responsible for the administration of all State mental health facilities and treatment centers, including Bryce Hospital, Tuscaloosa, Alabama. When not in session, the Alabama Mental Health Board acts through its chief administrative officer whose title is State Mental Health Officer. This position is presently held by Dr. Stonewall B. Stickney.[2]

Bryce Hospital is located in Tuscaloosa, Alabama, and is a part of the mental health service delivery system for the State of Alabama. Bryce Hospital has approximately 5,000 patients, the majority of whom are involuntarily committed through civil proceedings by the various probate judges in Alabama. Approximately 1,600 employees were assigned to various duties at the Bryce Hospital facility when this case was heard on plaintiffs' motion for a preliminary injunction.

During October 1970, the Alabama Mental Health Board and the administration of the Department of Mental Health terminated 99 of these employees. These terminations were made

1. Plaintiff-employees have now withdrawn their request that they be reinstated as employees of the Alabama Mental Health Board. This completely eliminates their reinstatement claims from the case.

2. The Alabama Mental Health Board is also responsible for other State mental health facilities, such as that located at Searcy Hospital, Mount Vernon, Alabama. However, in this case this Court is not concerned with the operation of the facility at Searcy, since plaintiffs have not properly raised the "adequacy of treatment" afforded by the State of Alabama to patients at Searcy Hospital. Plaintiffs, in their post-trial briefs, argue that they have properly raised the "adequacy of treatment" afforded the patients at Searcy Hospital; however, this Court finds that the defendants were not fairly apprised that plaintiffs intended to include Searcy and the pleadings in this case do not so reflect.

due to budgetary considerations and, according to the evidence, were necessary to bring the expenditures at Bryce Hospital within the framework of available resources. This budget cut at Bryce Hospital was allegedly necessary because of a reduction in the tax revenues available to the Department of Mental Health of the State of Alabama, and also because an adjustment in the pay periods for personnel which had been directed by the Alabama legislature would require additional expenditures. The employees who were terminated included 41 persons who were assigned to duties such as food service, maintenance, typing, and other functional duties not involving direct patient care in the hospital therapeutic programs. Twenty-six persons were discharged who were involved in patient activity and recreational programs. These workers were involved in planning social and other types of recreational programs for the patient population. The remaining 32 employees who were discharged included 9 in the department of psychology, 11 in the social service department, with varying degrees of educational background and experience, three registered nurses, two physicians, one dentist and six dental aides. After the termination of these employees, there remained at Bryce Hospital 17 physicians, approximately 850 psychiatric aides, 21 registered nurses, 12 patient activity workers, and 12 psychologists with varying academic qualifications and experience, together with 13 social service workers. Of the employees remaining whose duties involved direct patient care in the hospital therapeutic programs, there are only one Ph.D. clinical psychologist, three medical doctors with some psychiatric training (including one board eligible but no board-certified psychiatrist) and two M.S.W. social workers.

The Alabama Department of Mental Health, during the last two and one-half years, has been engaged in rather extensive reorganization. This reorganizational effort, according to testimony, is designed to render a more efficient and effective delivery of treatment to patients at Bryce Hospital and in the other mental hospitals [3] within the Alabama Mental Health system. A part of the organizational effort was a transition from a departmental system of organization at Bryce Hospital to the unit-team system of delivery of mental health services and treatment to patients at Bryce Hospital. The unit-team system, as it is termed, divides the State of Alabama into contiguous geographical county units, with mentally ill patients from each such geographical area being assigned to a particular unit within the hospital. This geographical distribution is divided between Searcy and Bryce Hospitals, with Searcy accommodating the counties in the southerly part of the State and Bryce in the remainder of the State. Approximately ten units are ultimately planned for the Bryce facility. The unit is to be headed by a team leader who will normally be a professional. It is proposed that the units contain such professionals as physicians, psychologists, and social workers, as well as psychiatric aides and nurses. The patients within the unit are to receive individual attention from such hospital personnel according to their needs. This Court cannot now say upon the evidence that has been presented that the decision of the Alabama Department of Mental Health to adopt the unit-team treatment delivery approach was an improper exercise of medical and professional judgment. The evidence is clear that the unit-team approach is a scientifically recognized and acceptable method of delivering treatment to mental health patients. It seems to be a nationally recognized method for the improvement of the delivery of therapeutic services to patients in mental hospitals. This Court is unable at this time to evaluate the therapeutic effectiveness of the unit-team delivery approach at Bryce Hospital. This

---

3. Searcy, located at Mount Vernon, Alabama.

is true due to the fact that at the time of the hearing upon plaintiffs' motion for a preliminary injunction the transition had only just been completed, but not fully implemented.

Included in the Bryce Hospital patient population are between 1,500 and 1,600 geriatric patients who are provided custodial care but no treatment. The evidence is without dispute that these patients are not properly confined at Bryce Hospital since these geriatric patients cannot benefit from any psychiatric treatment or are not mentally ill. Also included in the Bryce patient population are approximately 1,000 mental retardates, most of whom receive only custodial care without any psychiatric treatment. Thus, the evidence reflects that there is considerable confusion regarding the primary mission and function of Bryce Hospital since certain nonpsychotic geriatric patients and the mental retardates, and perhaps other nonmentally ill persons, have been and remain committed there for a variety of reasons.

■ The evidence further reflects that Alabama ranks fiftieth among all the states in the Union in per-patient expenditures per day.[4] This Court must, and does, find from the evidence that the programs of treatment in use at Bryce Hospital prior to the reorganization that has resulted in the unit-team approach were scientifically and medically inadequate. These programs of treatment failed to conform to any known minimums established for providing treatment for the mentally ill.

■■ The patients at Bryce Hospital, for the most part, were involuntarily committed through noncriminal procedures and without the constitutional protections that are afforded defendants in criminal proceedings. When patients are so committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451; Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617. Adequate and effective treatment is constitutionally required because, absent treatment, the hospital is transformed "into a penitentiary where one could be held indefinitely for no convicted offense." Ragsdale v. Overholser, 108 U.S.App.D. C. 308, 281 F.2d 943, 950 (1960). The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment. This is the only justification, from a constitutional standpoint, that allows civil commitments to mental institutions such as Bryce. According to the evidence in this case, the failure of Bryce Hospital to supply adequate treatment is due to a lack of operating funds. The failure to provide suitable and adequate treatment to the mentally ill cannot be justified by lack of staff or facilities. Rouse v. Cameron, supra. In *Rouse* the Court stated:

> We are aware that shortage of psychiatric personnel is a most serious problem today in the care of the mentally ill. In the opinion of the American Psychiatric Association no tax-supported hospital in the United States can be considered adequately staffed. We also recognize that shortage cannot be remedied immediately. But indefinite delay cannot be approved. "The rights here asserted are * * * *present* rights * * * and, unless there is an overwhelming compelling reason, they are to be promptly fulfilled." Watson v. City of Memphis, 373 U.S. 526, 533, [83 S. Ct. 1314, 1318, 10 L.Ed.2d 529] (1963). (Emphasis in original.)

4. No evidence was presented on the point, but the plaintiffs in their post-trial brief advised this Court that Bryce Hospital has not conformed with the standards of the Social Security Administration to the point of becoming eligibile for federal funds under the Medicare and Medicaid programs. Plaintiffs' counsel further advised in their brief that Bryce Hospital had not applied for certification for eligibility for these funds.

There can be no legal (or moral) justification for the State of Alabama's failing to afford treatment—and adequate treatment from a medical standpoint—to the several thousand patients who have been civilly committed to Bryce's for treatment purposes. To deprive any citizen of his or her liberty upon the altruistic theory that the confinement is for humane therapeutic reasons and then fail to provide adequate treatment violates the very fundamentals of due process.

As stated, this Court cannot at this time make any finding with regard to whether the unit-team system approach or the departmental approach is a better treatment delivery mechanism for Bryce Hospital. Nor can this Court at this time make any finding regarding the "adequacy" of the treatment to be given under the unit-team approach. It may very well be that when the unit-team approach is implemented in the Bryce facility the patients committed there will be receiving such individual treatment as will give each of them a realistic opportunity to be cured or to improve his mental condition. On the other hand, it may be that the unit-team approach will not provide such treatment.

██ The plaintiffs by formal motion ask this Court for an order of reference in order that there may be an authoritative determination of standards of the adequacy of the mental treatment now used and to be used in effectuating the right to treatment for those who are incarcerated in the Bryce facility. The defendants oppose this Court's making such an order of reference at this time, arguing that it is only proper that the defendants be allowed the opportunity to set standards and to make evaluations for submission to the Court prior to the time this Court appoints masters to perform this task. This Court has concluded that it will, for the time being, reserve ruling upon plaintiffs' motion for an order of reference. The reservation upon plaintiffs' motion for an order of reference will be *for a limited time* so as to afford the defendants an opportunity to promulgate and implement proper standards for the adequate mental care of the patients in the Bryce Hospital facility and in order to allow the defendants a reasonable time to implement fully the unit-team approach and to measure the effectiveness of the unit-team therapeutic treatment programs at the Bryce facility. This Court recognizes that this is a matter which will take thorough study and will require professional judgment and evaluation. The evidence reflects that the defendant Dr. Stonewall B. Stickney is, if he is afforded adequate funds for staffing and facilities, qualified to study, to evaluate, to institute, and to implement fully appropriate mental health treatment programs. A failure on the part of the defendants to implement fully, within six months from the date of this order, a treatment program so as to give each of the treatable patients committed to Bryce facility a realistic opportunity to be cured or to improve his or her mental condition, will necessitate this Court's appointing a panel of experts in the area of mental health to determine what objective and subjective hospital standards will be required to furnish adequate treatment to the treatable mentally ill in the Bryce facility. This will include an order requiring a full inspection of the existing facilities, a study of the operational and treatment practices and programs, and recommendations that will enable this Court to determine what will be necessary in order to render the Bryce facilities a mental health unit providing adequate and effective treatment, in a constitutional sense, for the patients who have been involuntarily committed and are confined there.

Accordingly, it is the order, judgment and decree of this Court that the defendants, within ninety days from the date hereof, prepare and file with this Court:

a. A precise definition of the mission and functions of Bryce Hospital;

b. A specific plan whereby appropriate and adequate treatment will be provided to the patients at Bryce Hospital

who, from a medical standpoint, may be responsive to mental health treatment;

c. A report reflecting in detail the progress on the implementation of the unit-team approach in the Bryce facility. This report should reflect the number of unit teams, the number of patients in each unit, a breakdown of professionals assigned to each unit by discipline, and the number of patients in each unit who are receiving individual attention from some member of the professional disciplines and how often this treatment is accorded.

In this connection, records are to be maintained detailing the names of the patients entitled to receive—from a medical standpoint—psychiatric care and treatment, and the type and extent of the treatment being administered. Such reports must be made available to plaintiffs' attorneys and to the attorneys of any other parties who may appear in this case as amicus.

It is further ordered that the United States of America, acting through the United States Department of Justice and other appropriate officials such as the officials of the United States Department of Health, Education and Welfare, be and it is hereby requested and invited to appear in this cause as amicus for the purpose of assisting this Court in evaluating the treatment programs at the Bryce Hospital facility and in assisting the defendants in meeting the subjective standards of the United States Department of Health, Education and Welfare as said standards pertain to adequate treatment, personnel, space, equipment and facilities. The Department of Health, Education and Welfare and the United States Public Health Service are also requested and invited to participate, through the United States Department of Justice, as amicus, in order to assist the defendants in qualifying for Social Security benefits for the approximately 1,500 to 1,600 geriatric patients who are presently housed at Bryce Hospital for custodial purposes; this invitation to these agencies is also for the purpose of rendering assistance to the defendants

in formulating and implementing a feasible plan that will benefit each of these geriatric patients by his or her becoming appropriately situated in some type facility other than a facility for the treatment of the mentally ill.

It is further ordered that ruling on plaintiffs' motion for an order of reference be and the same is hereby reserved.

This Court specifically retains jurisdiction of this case.