Donna Michelle **COLLINS**, Plaintiff,

v.

Peter B. **BENSINGER**, etc., et al.,
Defendants.

**No. 73 C 2279.**

United States District Court,
N. D. Illinois, E. D.

March 27, 1974.

David C. Thomas, Woodlawn Crim. Defense Serv., Chicago, Ill., for plaintiff.

Raymond McKoski, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This is an action under 42 U.S.C. § 1983, § 1985, § 1986 and § 1988, for compensatory and punitive damages arising from treatment plaintiff received, or failed to receive, while she was committed to the custody of Illinois authorities under the Illinois Juvenile Court Act. Ill.Rev.Stat. ch. 37, § 701–1 et seq. The defendants, several administrative officials in the state correctional and juvenile systems, have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P. As the following discussion will indicate, the sole and narrow question presented by this motion is whether a juvenile, formerly institutionalized in a state's correctional and juvenile systems, may obtain pecuniary relief from the officials responsible for the operation of those systems for their alleged failure to meet their constitutional duty to provide adequate treatment, when the constitutional "right to treatment" was not established in the jurisdiction until almost a year

after plaintiff's release from state custody.

The basis for this lawsuit is plaintiff's unfortunately extended and apparently unsuccessful contact with the state institutions and personnel under defendants' supervision. This history began in February, 1970, when plaintiff was adjudicated a "minor in need of supervision," Ill.Rev.Stat. ch. 37, § 702–3, and terminated in January, 1973, upon her release from the Illinois State Training School for Girls at Geneva by a state court order. During this period, plaintiff was alternately on parole and incarcerted at Geneva for violations of her parole conditions. She was institutionalized for a total of 611 days.

The juvenile proceedings and incarceration of the plaintiff during this period occurred pursuant to the Juvenile Court Act. That statute is intended to secure for the juvenile "such care and guidance . . . as will serve the moral, emotional, . . . and physical welfare of the minor and the best interests of the community," and, further, seeks to obtain the "custody, care and discipline as nearly as possible equivalent to that which should be given by his parents." Ill.Rev.Stat. ch. 37, § 701–2(1).

It is clear from the complaint and the briefs submitted on this motion that plaintiff bases her right to recovery upon a claimed constitutional "right to treatment." Illinois, like many other states, does not accord alleged juvenile offenders all the procedural safeguards which federal and state constitutions and case law mandate for their adult counterparts. In light of the absence of these protections, plaintiff claims that, as a minor, she was entitled to, but did not receive, affirmative rehabilitative treatment "adequate to give her a realistic opportunity to be cured of, or to improve, her emotional disorders or her possible mental disorders." In particular, plaintiff complains of defendants' failure (1) to devise or implement an adequate individualized treatment plan for her, (2) to provide sufficient qualified therapeutic personnel, (3) to make psychiatric treatment available other than during certain "emergencies," or (4) to act upon recommendations made by the psychiatrist to whom she was referred during these emergencies. The allegedly inadequate treatment is claimed to have deprived plaintiff of her rights to due process of law under the Fourteenth Amendment and to be free of cruel and unusual punishment under the Eighth Amendment, and to have violated her statutory rights under the Juvenile Court Act.

The concept of a constitutionally protected right to treatment for juveniles has only recently gained judicial acceptance. See Nelson v. Heyne, 355 F.Supp. 451 (N.D.Ind.1973), aff'd, 491 F.2d 352 (7th Cir. 1974); Morales v. Turman, 364 F.Supp. 166 (E.D.Texas 1973); Martarella v. Kelley, 349 F.Supp. 575 (S.D.N.Y.1972); Inmates of Boys' Training School v. Affleck, 346 F.Supp. 1354 (D.R.I.1972); Wyatt v. Stickney, 325 F.Supp. 781 (M.D.Ala.1971); 344 F.Supp. 373 (M.D.Ala.1972).

Although not all jurisdictions are in accord with this development, see New York Ass'n. for Retarded Children, Inc. v. Rockefeller, 357 F.Supp. 752 (E.D.N.Y.1973); Burnham v. Department of Public Health, 349 F.Supp. 1335 (M.D.Ga.1972), the Seventh Circuit recently adopted plaintiff's position. In affirming Nelson v. Heyne, *supra,* the court determined that, under the federal constitution, juvenile offenders are entitled to "minimum acceptable standards of care and treatment . . . and the right to individualized care and treatment." Nelson v. Heyne, *supra,* 491 F. 2d p. 360. The court in *Nelson,* like the other courts which have reached a similar conclusion, reasoned that treatment must be the *quid pro quo* for society's right to exercise its *parens patriae* control over minors without the fundamental due process safeguards accorded adult offenders. *Id.* at 359. See Martarella v. Kelley, *supra,* 349 F.Supp. at 599–600; Inmates of Boys' Training School v. Affleck, *supra,* 346 F.Supp. at 1364–1365; Wyatt v. Stickney, *supra,*

325 F.Supp. at 784. Thus, it is clear that were plaintiff still incarcerated and seeking to have the defendants adopt an adequate program, there is little doubt but that such an action could proceed. See Morales v. Turman, *supra*; Martarella v. Kelley, *supra*; Inmates of Boys' Training School v. Affleck, *supra*; Wyatt v. Stickney, *supra*.[1]

However, two critical distinctions separate Miss Collins from the plaintiffs in *Nelson* and the other cases which have established a constitutional right to treatment. First, plaintiff here is no longer in residence at a state institution, and, second, she is asking for $500,000 in compensatory and punitive relief. In contrast, the cases upon which plaintiff relies involved juveniles who were still institutionalized and who were seeking an improvement in their care and treatment through declaratory and injunctive relief only.

■ It is well-established that state custodians are not immune from liability under the civil rights statutes. See Wheeler v. Glass, 473 F.2d 983 (7th Cir. 1973). However, as recently well-stated by the Seventh Circuit,

> "federal courts have reached a general consensus that liability for damages under 42 U.S.C. § 1983 must be determined by the legal standards in existence at the time of an alleged violation of constitutional rights. * * * Retroactive application of fresh precedent has no place in fixing the standard of conduct for damage suits under Section 1983." Slate v. McFetridge, 484 F.2d 1169, 1174 (7th Cir. 1973).

The rationale for this rule is obvious: Elemental tenets of justice would be offended were a person to be held liable for actions or omissions which he could not be expected to have known would cause his liability. *Id.* Although the defendant state officials may be expected to be reasonable men, "they neither can nor should be expected to be seers in the crystal ball of constitutional law," Westberry v. Fisher, 309 F.Supp. 12, 17 (D.Me.1970); they are not "charged with predicting the future course of constitutional law." Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). The public interest would be disserved by the imposition of such a predictive burden, for qualified people might thereby be deterred from entering public service. Slate v. McFetridge, *supra*.

Under these standards, it is clear that money damages are entirely inappropriate here. First, there was no clear mandate prior to the Seventh Circuit decision in *Nelson*, on January 31, 1974, that youths confined under the jurisdiction of a juvenile court had a constitutional right to rehabilitative treatment. Second, the U. S. Supreme Court, although on several occasions assuming that a state must provide treatment, has never definitively addressed this question. Third, during the time frame pertinent here, the courts were (and still are) split on whether this constitutional right exists.

In this situation, the statement made by the court in Slate v. McFetridge, *supra*, is particularly applicable:

> "Courts should be wary of too broadly construing cases which set down the law of times past, particularly where new cases have widened the scope of doctrine earlier announced. . . . [T]he narrow reading by a public official of a case on constitutional law must be upheld unless patently unreasonable and without arguable support in logic or policy." 484 F.2d at 1174.

---

1. The Seventh Circuit bases its holding in *Nelson* on the U. S. Constitution. Like the plaintiff in *Nelson*, plaintiff here also maintains that she has a *statutory* right to treatment under the Illinois Juvenile Court Act. To adopt the language of the court in *Nelson*, "[w]e agree with this conclusion. Since we have today determined that the federal Constitution affords juveniles a right to treatment, any interpretation of the [Illinois] Act which would find no such right to exist would be itself unconstitutional." Nelson v. Heyne, *supra*, 491 F.2d at p. 360 n. 12.

Any determination by the defendants here that the Supreme Court decisions were not directly applicable, or did not require more than was done for plaintiff, cannot be deemed "patently unreasonable or without arguable support in logic or policy."

■ Defendants characterize the complaint as sounding in tort to recover for their failure to comply with a statutory duty. Notwithstanding this characterization of her suit, which she disputes, plaintiff asserts that the complaint is still sufficient. Assuming *arguendo* that the complaint is framed in terms of negligence, it still must fail. Numerous courts have held that various types of tortious conduct can be the basis for relief under the civil rights statutes. See, *e. g.*, Puckett v. Cox, 456 F. 2d 233, 234–235 (6th Cir. 1972) (citing cases). These cases, however, do not eliminate the requirement that plaintiff must establish a deprivation of constitutional rights on the part of the defendants. *Id.* at 235. See Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Pinkston v. Bensinger, 359 F.Supp. 95 (N.D.Ill.1973); Hopkins v. County of Cook, 305 F.Supp. 1011 (N.D.Ill.1969). Since plaintiff did not have an announced constitutionally protected right to treatment during her institutionalization, any "negligence" of the defendants in this regard could not have constituted a deprivation of constitutional rights.[2]

■■ Finally, plaintiff alleges that defendants conspired to deny her adequate treatment, apparently relying upon 42 U.S.C. § 1985. This section applies only to conspiracies to deprive persons of equal protection and does not apply to conspiracies to violate due process or Eighth Amendment rights. See Brosten v. Scheeler, 360 F.Supp. 608,

614 (N.D.Ill.1973). Insufficient facts are alleged to support any claim of a denial of equal protection, Huey v. Barloga, 277 F.Supp. 864, 868–889 (N.D.Ill. 1967); in fact, "equal protection" is not mentioned in the complaint or in any of plaintiff's pleadings. Thus, no cause of action has been stated under 42 U.S.C. § 1985.

For the reasons set forth above, it is clear that even if plaintiff did not receive what is presently deemed to be constitutionally adequate treatment, monetary damages could not be awarded against these defendants. Accordingly, the court has concluded that plaintiff has failed to state any claim upon which relief could be granted and the cause is hereby dismissed.[3]

---

2. The complaint contains no allegation of physical abuse or gross neglect on the part of the defendants or anyone connected with the facilities administered by them.

3. In light of this disposition, the court need not reach the question whether the assertions made in paragraph 27 of the complaint sufficiently alleged the personal participation or direction required to hold supervisory personnel liable under the civil rights statutes. Sanberg v. Daley, 306 F.Supp. 277, 278 (N.D.Ill.1969).