Tyrone **PARKER**, Plaintiff,

v.

**CHICAGO HOUSING AUTHORITY, and Zirl Smith, Wendell Johnson, and Teresa E. Banaszak, individually and in their official capacities, Defendants.**

**No. 87 C 2249.**

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1989.

**116**

Clincy M. Latimer, Jr., Lake Zurich, Ill., for plaintiff.

Marilyn T. Kuhr and Anthony J. Fusco, Jr., Chicago Housing Authority, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The plaintiff, Tyrone Parker ("Parker"), has brought this action against his former employer, the Chicago Housing Authority ("CHA"), and his former co-workers, Zirl Smith ("Smith"), Wendell Johnson ("Johnson"), and Teresa E. Banaszak ("Banaszak"), in their individual and official capacities. Parker's complaint, as amended, consists of three counts. In the first count, Parker alleges that the defendants are liable to him under 42 U.S.C. § 1983 for terminating him without due process, in violation of the Fourteenth Amendment. In the second count, Parker alleges that the defendants conspired to deprive him of his due process rights, in violation of 42 U.S.C. § 1985(3). In the third count, Parker alleges a breach of contract claim under state law based on the provisions of the CHA employment manual.

The CHA has moved to dismiss all three counts of Parker's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth in this opinion, the Court grants the CHA's motion to dismiss Count I, but gives Parker leave to amend that count; grants the CHA's motion to dismiss Count II and dismisses that count with prejudice; and reserves ruling on the CHA's motion to dismiss Count III pending Parker's determination as to whether he is able to amend Count I so as to state a cognizable civil rights claim.

---

1. As the CHA points out in its opening brief, as of the date the Court set a briefing schedule on this motion, Parker had not served the individual defendants. An examination of the docket sheet confirms that no service has been made on the individual defendants to date. Because these defendants, in their individual capacities, have not been served, they have not filed an appearance or a responsive pleading. As a result, the CHA brings this motion to dismiss only on behalf of itself as a municipality (and, presumably, on behalf of the other defendants to the extent that they have been sued in their official capacities).

## I. FACTS

From May 11, 1971 until his termination on February 14, 1986, Parker was employed by the CHA. At the time of his termination, Parker held the position of manager of the Robert Taylor–I Homes. The Robert Taylor–I Homes operate under the auspices of the CHA, which is a municipal corporation charged by statute with controlling low-income housing in the Chicago metropolitan area and governed by a seven-member Board of Directors. Prior to and at the time of Parker's termination, Smith served as Executive Director of the CHA, Johnson served as Deputy Executive Director of the CHA, and Banaszak served as Director of Human Resources of the CHA.

This action arises as a result of Parker's termination by the CHA and certain events preceding his termination. On November 8, 1986, while employed by the CHA, Parker requested permission from his supervisor, Johnson, to receive medical treatment for an alcohol problem. Johnson granted Parker permission to enter an alcohol treatment program at Presbyterian–St. Luke's Hospital ("St. Lukes") for a two-week period. According to Parker, he could not enter that particular treatment program because of his H.M.O. Insurance Plan. After February 6, 1986, however, Parker entered and successfully completed two successive alcohol treatment programs, each of which was offered by another local hospital.

On February 6, 1986, before Parker entered these programs, but after he received Johnson's permission to enter the St. Luke's program, Parker attended a manager's meeting in Johnson's office. At the conclusion of the meeting, Johnson interviewed Parker and alleged that Parker was under the influence of alcohol, an allegation which Parker denies. Based on this interview, Johnson informed Parker that his employment was suspended and that

Johnson would recommend Parker's termination. On February 14, 1986, the CHA terminated Parker from his position as manager of Robert Taylor–I Homes.

After a post-termination hearing held on March 3, 1986, the hearing officer recommended that Parker's termination should stand as administered. On April 2, 1986, Parker wrote to Smith, requesting that Smith review the circumstances surrounding Parker's termination and charging that the CHA had violated its own written policies and procedures governing termination, as set forth in the CHA's Manual of Administrative Personnel Policies and Procedures ("the CHA manual"). Smith and Parker subsequently held two meetings regarding Parker's termination. After those meetings, Smith also recommended that Parker's termination stand. This lawsuit followed.

## II. DISCUSSION

■ In ruling on the CHA's motion to dismiss, the Court accepts all well-pleaded allegations of Parker's amended complaint as true and views these allegations in the light most favorable to Parker. *See Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Nevertheless, the fact that Parker's amended complaint is to be viewed liberally does not relieve him of the duty to allege sufficient facts to support his cause of action. *See Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Guided by these standards, we examine each count of Parker's amended complaint in turn.

### A. *Count I: Parker's Claim Under 42 U.S.C. § 1983*

In Count I of his amended complaint, Parker claims that the defendants violated Section 1983[2] in the following respects:

---

**2.** Section 1983 was enacted to enforce the provisions of the Fourteenth Amendment. It provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen

of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

(1) by failing to provide him with a written notice of the reasons for his termination, as required by the CHA manual;

(2) by failing to provide him with a pre-termination hearing so that he could challenge the termination decision, as required by the CHA manual;

(3) by failing to conduct an impartial investigation of the events leading up to his suspension; and

(4) by failing to provide him with written notice of the reasons for his termination in advance of his post-termination hearing.

According to Parker, his right of continued employment with the CHA constitutes a property interest, and the defendants deprived him of this property interest without due process of law by terminating him without following the CHA's prescribed procedures.

The CHA has moved to dismiss Parker's Section 1983 claim on three separate grounds.[3] First, the CHA contends that Parker has failed to plead that his alleged deprivation resulted from some official policy or custom attributable to the CHA. Second, the CHA argues that Parker has failed to adequately plead the deprivation of a right protected by the Fourteenth Amendment. Finally, the CHA asserts that even if Parker has adequately pleaded the existence of a constitutionally protected interest, he was not deprived of due process as a matter of law. Because we agree with the CHA's first argument that Parker has failed to allege sufficient facts in his amended complaint to establish municipal liability on the part of the CHA, we do not reach the CHA's other arguments.

The Supreme Court first addressed the issue of the scope of municipal liability under Section 1983 in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Court rejected the notion of *respondeat superior* liability, concluding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. Without attempting to distinguish between actions taken pursuant to official policy and actions taken independently by municipal employees or agents, the Court in *Monell* indicated that it left the "full contours" of municipal liability under Section 1983 for another day. *Monell*, 436 U.S. at 695, 98 S.Ct. at 2038.

In *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), that day arrived. In *Pembaur*, the Supreme Court was faced with deciding whether and when an isolated decision made by a municipal official constitutes a "policy or custom" sufficient to hold the municipality liable under *Monell*. Attempting to clarify the contours of municipal liability under Section 1983, a plurality of the Court in *Pembaur* reaffirmed the holding of *Monell*, but held that only those municipal officials who have "final policymaking authority" in a given area may, by their actions, subject a municipality to liability under Section 1983 for a single, isolated decision in that area. *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. at 1300. The *Pembaur* Court, however, emphasized that municipal liability would not attach in every situation where a municipal official makes a decision, stating:

> The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does

**3.** The CHA filed its motion to dismiss pursuant to Rule 12(b)(6). In response to the CHA's motion, however, Parker filed a memorandum accompanied by materials outside of the pleadings. For that reason, the CHA attached to its reply memorandum an affidavit and suggested that we treat the CHA's motion to dismiss Count I as a motion for summary judgment under Rule 56. Because we need not, and, therefore, do not, consider either the outside materials submitted by Parker or the affidavit submitted by the CHA in arriving at our ruling, we decline to convert the CHA's motion to dismiss Count I into a motion for summary judgment.

not, without more, give rise to municipal liability based on an exercise of that discretion. [Citation omitted]. The official must also be responsible for establishing *final government policy* respecting such activity before the municipality can be held liable.

*Pembaur,* 475 U.S. at 481–83, 106 S.Ct. at 1299–1300. (emphasis supplied). The Court further stated that whether a particular municipal official has "final policymaking authority" is a question of state law.

Recently, in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court attempted to refine the principles articulated in *Pembaur* and to further clarify the scope of municipal liability under Section 1983. Noting that the Courts of Appeal already had diverged in their respective interpretations of the *Pembaur* principles, the Court in *Praprotnik* further explained the principles articulated in *Pembaur,* paring them down to two guiding principles. First, the Court reaffirmed that the issue of whether a given official possesses "final policymaking authority" is determined by reference to state law. *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 924. Second, the Court provided a more elaborate definition of "final policymaking authority" for purposes of municipal liability under Section 1983:

> [T]he authority to make municipal policy is necessarily the authority to make *final* policy. [Citation omitted]. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly,

when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (emphasis in original).

■ Applying the principles of *Monell* and its progeny to this case, we conclude that the allegations contained in Count I of Parker's amended complaint do not adequately establish municipal liability on the part of the CHA under Section 1983. While Parker casually mentions that the CHA is governed by a seven-member board, he alleges no facts which implicate the board or its members in his termination. Indeed, Parker does not claim that the CHA board promulgated an unconstitutional termination policy in the form of the CHA manual or otherwise.[4] On the contrary, Parker alleges that certain CHA employees failed to follow or honor the due process provisions set forth in the CHA manual when they recommended his termination.[5] This is exactly the scenario under which *Monell* and its progeny held that municipal liability is inappropriate.

Although Parker may implicate some fairly high-ranking CHA officials in Count I, the Illinois Housing Authorities Act ("the Act"), the state statute creating the CHA and vesting it with certain powers, does not specifically vest any of these CHA employees with "final policymaking authority"

---

**4.** In his response to the CHA's motion for leave to file additional authority, Parker belatedly attempts to allege that a handful of complaints filed by other CHA employees alleging similar violations of personnel policy by the CHA establishes a widespread practice or custom on the part of the CHA of violating due process. Rejecting this reasoning in another Section 1983 case, the Seventh Circuit made the following observation: "[T]he number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies [alleged to exist] do in fact exist ..." *Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985). Based on

*Strauss,* Parker's attempt to establish an unconstitutional policy or practice in this fashion fails.

**5.** Incidentally, Parker's amended complaint is devoid of any explanation as to the basis for holding Banaszak liable. Other than alleging that Banaszak, as Director of Human Resources, is responsible for reviewing each termination to assure compliance with the CHA manual, Parker explains nothing about Banaszak's role in the events precipitating this lawsuit. Nor is there any indication that Banaszak had any sort of "final policymaking authority."

over personnel matters. *See* Housing Authorities Act, Ill.Rev.Stat. ch. 67-½, ¶ 1 *et seq.* In fact, the Act does not specifically delegate authority to make final personnel decisions to any particular municipal official within the CHA; rather, the Act appears to generally vest all policymaking authority in the seven-member board. Yet, as mentioned already, Parker has not alleged any facts which expressly indicate or even implicitly suggest that the CHA board members made a deliberate choice to deny Parker due process of law. Nor has Parker demonstrated, through citation to other state law or local ordinance, that the CHA board has delegated "final policymaking authority" over personnel decisions to any of the other named defendants.[6]

For these reasons, we dismiss Count I of Parker's amended complaint. Parker, however, has requested leave to amend the complaint in the event we determined it to be deficient. Because Parker may be able to state a cognizable claim based on the principles articulated in *Monell* and its progeny, we give him one final opportunity to amend Count I of his complaint. In the event Parker believes that he can allege in good faith facts which might give rise to liability on the part of the CHA, he must file an amended complaint on or before December 29, 1989.

**B.** *Count II: Parker's Claim Under 42 U.S.C. § 1985(3)*

In Count II of his amended complaint, Parker alleges that the defendants con-spired to deprive him of his "liberty to pursue his career with due process," in violation of 42 U.S.C. § 1985(3).[7] Regardless of whether Parker can ultimately state a claim under Section 1983, however, his allegations provide no basis for relief under Section 1985(3).

■ In order to state a claim for relief under Section 1985(3), one must allege the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance; and (4a) an injury to his person or his property, or (4b) a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Munson v. Friske*, 754 F.2d 683, 694 (7th Cir. 1986). The Supreme Court has held that in order to avoid turning Section 1985(3) into a general federal tort law, the statutory language requiring intent to deprive of equal protection or equal privileges and immunities under the law means that there must be some racial or other class-based invidious discriminatory animus behind the conspirators' actions. *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.[8] *See also Loy v. Clamme*, 804 F.2d 405, 408 (7th Cir.1986).

■ Using these requirements as a benchmark, Count II of Parker's amended

---

**6.** Moreover, any suggestion that the board simply went along with the decisions of the CHA employees named in Parker's complaint or failed to investigate the circumstances surrounding Parker's termination would not be sufficient to impose liability under Section 1983. As the Court stated in *Praprotnik*, merely "going along with discretionary decisions made by one's subordinates" or "fail[ing] to investigate the basis of a subordinate's discretionary decisions" does not amount to a delegation of policymaking authority. *Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 928.

**7.** 42 U.S.C. § 1985(3) provides in relevant part: If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted au-thorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**8.** Since deciding *Griffin*, the Supreme Court has continued to narrowly construe this requirement of the statute. *See United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 837–38, 103 S.Ct. 3352, 3360–61, 77 L.Ed.2d 1049 (1983).

complaint is deficient in several respects. First, Parker has failed to demonstrate that he is a member of a class entitled to protection under Section 1985(3). Indeed, Parker's complaint is barren of any allegations regarding race or other class-based invidious discrimination. Although civil rights complaints are afforded liberal construction, this Court declines to interpret Parker's amended complaint as establishing an essential element of a civil rights conspiracy when his complaint is devoid of any such allegation.

■ Second, Parker's claim that the defendants conspired to deprive him of due process is not actionable under Section 1985(3). As the Seventh Circuit has observed, in enacting Section 1985(3), Congress did not seek to prohibit alleged conspiracies to deny due process; rather, Congress sought to prohibit alleged conspiracies to deny equal protection. *Brosten v. Scheeler*, 360 F.Supp. 608, 614 (N.D.Ill. 1973), *aff'd without opinion*, 495 F.2d 1375 (7th Cir.1974); *Collins v. Bensinger*, 374 F.Supp. 273, 277 (N.D.Ill.1974), *aff'd without opinion*, 506 F.2d 1405 (7th Cir.1974), *cert. denied*, 422 U.S. 1058, 95 S.Ct. 2683, 45 L.Ed.2d 710 (1975). Nowhere in Parker's amended complaint does he allege an equal protection violation, nor can such a violation be reasonably inferred.

Finally, while Parker has alleged that two or more individuals within the CHA may have participated in the decision to terminate him, that fact, without more, does not necessarily dictate the conclusion that those individuals are conspirators. According to the CHA, allegations of a "intra-corporate" conspiracy do not satisfy the statutory requirement of Section 1985(3) that "two or more persons ... conspire." This statement is not altogether accurate. In *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir.1988), the Seventh Circuit rejected as an inaccurate interpretation of the law the general proposition that Section 1985(3) does not apply to intra-entity conspiracies. By way of clarification, however, the court in *Volk* relied on an earlier case, *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir.1972). In *Dombrowski*, the Seventh Circuit explained that where "the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by [the] statute." *Dombrowski*, 459 F.2d at 196.

An examination of Count II of Parker's amended complaint reveals that it falls short of pleading a conspiracy under Section 1985(3) for the reason outlined in *Dombrowski*. Essentially, Parker has alleged that a single entity (the CHA), through several of its agents (the named CHA employees), committed a single act of discrimination (his termination without due process). In this Court's view, these allegations, which lack any concrete or factual support whatsoever, do not establish the existence of a conspiracy at all. Accordingly, we dismiss Count II of Parker's amended complaint. Because we do not believe that Parker can cure the noted deficiencies by amendment, our dismissal of his Section 1985(3) claim is with prejudice.

*C. Count III: Parker's Pendent State Law Claim For Breach of Contract*

Because Parker's ability to state a claim for relief under federal law is questionable at this juncture, we reserve ruling on the CHA's motion to dismiss the last count of Parker's amended complaint. Count III consists of a pendent state law claim for breach of contract. If Parker cannot amend Count I so as to state a cognizable claim under Section 1983, then this Court will relinquish jurisdiction of Parker's breach of contract claim to the state court.[9] That court, which is obviously more conversant with state law, is best suited to decide whether Count III states a viable breach of contract claim under state law.

---

**9.** Had Parker successfully served the individual defendants, of course, his Section 1983 claim against them, in their individual capacities, still may have survived the CHA's motion to dismiss. Because Parker has failed to serve the individual defendants, however, in effect, there are no viable claims pending against those defendants.

### III. CONCLUSION

For the reasons set forth in this opinion, the Court grants the CHA's motion to dismiss Count I of Parker's amended complaint, but grants Parker one final opportunity to amend this count on or before December 29, 1989. The Court also grants the CHA's motion to dismiss Count II of Parker's amended complaint and dismisses that count with prejudice. Finally, the Court reserves ruling on the CHA's motion to dismiss Count III of Parker's amended complaint. If Parker is able to amend Count I so as to state a cognizable federal claim, then the Court will rule on the viability of Parker's pendent state law claim for breach of contract. On the other hand, if Parker is unable to amend Count I to state a cognizable federal claim, then this Court will relinquish jurisdiction of Parker's pendent state law claim for breach of contract and let the state court decide the issues raised by the CHA's motion to dismiss Count III of Parker's amended complaint.